1  Matthew J. Matern (CA SBN 159798)
   mmatern@maternlawgroup.com
2  Joshua D. Boxer (CA SBN 226712)
   jboxer@maternlawgroup.com
3  **MATERN LAW GROUP, PC**
4  1230 Rosecrans Avenue, Suite 200
   Manhattan Beach, California 90266
5  Telephone:   (310) 531-1900
6  Facsimile:    (310) 531-1901

7  Attorneys for plaintiff Blackstone Hamilton
8  individually and on behalf of others
   similarly situated
9

10              UNITED STATES DISTRICT COURT

11              CENTRAL DISTRICT OF CALIFORNIA

12

13  Blackstone Hamilton, individually and on )    Case No.
14  behalf of others similarly situated,      )    2:19−cv−08182−MEMF−AFM
                                              )
15              Plaintiff,                    )    **CLASS ACTION**
                                              )
16       v.                                   )    [Assigned to Honorable Maame Ewusi-
                                              )    Mensah Frimpong]
17  Tarek El Moussa, an individual; Christina )
18  Anstead, an individual; Real Estate       )    **NOTICE OF ERRATA RE JOINT**
19  Elevated, LLC, a Nevada limited liability )    **CASE MANAGEMENT**
    company; Zurixx, LLC, a Utah limited      )    **STATEMENT**
20  liability company; and, DOES 1 through    )
21  50, inclusive,                            )
                                              )
22              Defendants.                   )
                                              )
23                                            )
                                              )
24                                            )

25

26

27

28
                              1
                     NOTICE OF ERRATA

1

2

        PLEASE TAKE NOTICE that Plaintiff Blackstone Hamilton ("Plaintiff") hereby
provides notice of errata and corrections as follows:

3

4

5

6

7

        On February 23, 2022, Plaintiff filed a Joint Case Management Statement. The
Joint Case Management Statement should have included two exhibits, which due to a
clerical oversight, were omitted. Plaintiff respectfully attaches, as **Exhibit A** to this
Errata, the **Exhibit 1** and **Exhibit 2** which should have been included to the Joint Case
Management Statement.

8

9

        Plaintiff's counsel apologize to the Court and Defendants for any confusion arising
out of this error.

10

11

12

DATED: February 23, 2022                    Respectfully Submitted,

13

                                            **MATERN LAW GROUP, PC**

14

15

                                            /s/ *Joshua D. Boxer*
                                     By: _____

16

                                            MATTHEW J. MATERN
                                            JOSHUA D. BOXER

17

                                            Attorneys for Plaintiff Blackstone,
                                            individually and on behalf of others
                                            similarly situated

18

19

20

21

22

23

24

25

26

27

28

EXHIBIT A

# EXHIBIT 1

<div align="center">

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF UTAH, CENTRAL DIVISION**

</div>

| | |
|---|---|
| FEDERAL TRADE COMMISSION, and <br><br> UTAH DIVISION OF CONSUMER PROTECTION, <br><br> <div align="center">Plaintiffs,</div><br> <div align="center">vs.</div><br> ZURIXX, LLC, *et al.* <br> <div align="center">Defendants.</div> | **STIPULATED ORDER FOR PERMANENT INJUNCTION AND MONETARY JUDGMENT** <br><br> Case No. 2:19-CV-00713-DAK-DAO <br><br> District Judge Dale A. Kimball <br><br> Magistrate Judge Daphne A. Oberg |

Plaintiffs, the Federal Trade Commission ("Commission" or "FTC") and the Utah Division of Consumer Protection ("Division") (collectively "Plaintiffs"), filed their Complaint for Permanent Injunction and Other Equitable Relief, subsequently amended as Second Amended Complaint for Permanent Injunction and Other Equitable Relief, (as amended, "Complaint") pursuant to Sections 13(b) and 19 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. §§ 53(b) and 57b, the Consumer Review Fairness Act ("CRFA"), 15 U.S.C. § 45b, the Telemarketing and Consumer Fraud and Abuse Prevention Act ("Telemarketing Act"), 15 U.S.C. §§ 6101-6108, the Telemarketing Sales Rule ("TSR"), 16 C.F.R. Part 310, the Utah Consumer Sales Practices Act ("UCSPA"), Utah Code § 13-11-1 *et seq.*, the Business Opportunity Disclosure Act ("BODA"), Utah Code § 13-15-1 *et seq.*, and the Telephone Fraud Prevention Act ("TFPA"), Utah Code § 13-26-1 *et seq.* Plaintiffs and Defendants stipulate to the entry of this Stipulated Order for Permanent Injunction and Monetary Judgment ("Order") to resolve all

<div align="center">Page 1 of 23</div>

matters in dispute in this action between them.

THEREFORE, IT IS ORDERED as follows:

## FINDINGS

1.      This Court has jurisdiction over this matter.

2.      The Complaint alleges that Corporate Defendants and Individual Defendants participated in deceptive and unlawful acts or practices in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), the CRFA, 15 U.S.C. § 45, the Telemarketing Sales Rule ("TSR"), 16 C.F.R. Part 310, the UCSPA, Utah Code § 13-11-1 *et seq.*, the BODA, Utah Code § 13-15-1 *et seq.*, and the TFPA, Utah Code § 13-26-1 *et seq.*, in the marketing and sale of real estate investment products and services.   The Complaint further alleges that Relief Defendant was unjustly enriched when she received ill-gotten proceeds derived from the deceptive and unlawful acts or practices alleged in the Complaint.

3.      Defendants neither admit nor deny any of the allegations in the Complaint, except as specifically stated in this Order.   Only for purposes of this action, Defendants admit the facts necessary to establish jurisdiction.

4.      Defendants waive any claim that they may have under the Equal Access to Justice Act, 28 U.S.C. § 2412, concerning the prosecution of this action through the date of this Order, and agree to bear their own costs and attorney fees.

5.      Defendants and Plaintiffs waive all rights to appeal or otherwise challenge or contest the validity of this Order.

## DEFINITIONS

For the purpose of this Order, the following definitions apply:

Page 2 of 23

A.     "**Business Coaching Program**" means any product or service, including any program or plan, that is represented, expressly or by implication, to train or teach a consumer how to establish, operate, or improve a business.

B.     "**Covered Communication**" means a written, oral, or pictorial review, performance assessment, or other similar analysis of goods or services, including conduct related to the goods or services.

C.     "**Defendants**" means all of the Individual Defendants, the Corporate Defendants, the Relief Defendant, the JSS Trustee Defendant individually, collectively, or in any combination.

 1.     "**Corporate Defendants**" means Zurixx, LLC, Brand Management Holdings, LLC, CAC Investment Ventures, LLC-Utah, CAC Investment Ventures, LLC-Puerto Rico, Carlson Development Group, LLC-Utah, Carlson Development Group, LLC-Puerto Rico, CJ Seminar Holdings, LLC, Dorado Marketing and Management, LLC, Zurixx Financial, LLC-Utah, Zurixx Financial, LLC-Puerto Rico, JSS Investment Ventures, LLC, JSS Trust, and their subsidiaries, successors and assigns.

 2.     "**Individual Defendants**" means Cristopher A. Cannon, James M. Carlson, and Jeffrey D. Spangler.

 3.     "**Relief Defendant**" means Stephenie J. Spangler.

 4.     "**JSS Trustee Defendant**" means Gerald D. Spangler, as Trustee for the JSS Trust.

D.     "**Document**" is synonymous in meaning and equal in scope to the usage of "document" and "electronically stored information" in Federal Rule of Civil Procedure 34(a), and includes writings, drawings, graphs, charts, photographs, sound and video recordings, images, Internet sites, web pages, websites, electronic correspondence, including e-mail and instant messages,

contracts, accounting data, advertisements, FTP Logs, Server Access Logs, books, written or printed records, handwritten notes, telephone logs, telephone scripts, receipt books, ledgers, personal and business canceled checks and check registers, bank statements, appointment books, computer records, customer or sales databases and any other electronically stored information, including Documents located on remote servers or cloud computing systems, and other data or data compilations from which information can be obtained directly or, if necessary, after translation into a reasonably usable form. A draft or non-identical copy is a separate document within the meaning of the term.

E. **"Earnings Claim"** means any representation, specific or general, about income, revenues, financial gains, percentage gains, profit, net profit, gross profit, or return on investment.

F. **"Person"** means any natural person or any entity, corporation, partnership, or association of persons.

G. **"Real Estate Coaching Program"** means any product or service, including any program or plan, that is represented, expressly or by implication, to train or teach a consumer how to make money through investing in or buying and selling real estate.

H. **"Receiver"** means the equity receiver David Broadbent and any deputy receivers that shall be named by the Receiver.

I. **"Review-Limiting Contract Term"** means a standardized contract term that: prohibits or restricts the ability of a person who is a party to the contract to engage in a Covered Communication; imposes or threatens to impose a penalty or fee against a person who is a party to the contract for engaging in a Covered Communication; or transfers, or requires a person who is a party to the contract to transfer, to any other person any intellectual property rights in a

Covered Communication, with the exception of a non-exclusive license to lawfully use a Covered Communication about a Defendant's goods or services.

J.     **"Telemarketing"** means any plan, program, or campaign which is conducted to induce the purchase of goods or services by use of one or more telephones, and which involves a telephone call, whether or not covered by the Telemarketing Sales Rule.

## ORDER

## I.     BAN ON MARKETING OR SELLING REAL ESTATE COACHING PROGRAMS AND BUSINESS COACHING PROGRAMS

IT IS ORDERED that the Corporate Defendants and Individual Defendants are permanently restrained and enjoined from advertising, marketing, distributing, promoting, offering for sale, or selling, or assisting in the advertising, marketing, distributing, promoting, offering for sale, or selling, of any Real Estate Coaching Program or any Business Coaching Program.

## II.   PROHIBITIONS REGARDING TELEMARKETING

IT IS FURTHER ORDERED that the Corporate Defendants and Individual Defendants, their officers, agents, employees, attorneys, and all other Persons in active concert or participation with them, who receive actual notice of this Order by personal service or otherwise, whether acting directly or indirectly, in connection with Telemarketing of any goods or services are permanently restrained and enjoined from:

A.  misrepresenting risk, liquidity, earnings potential, or profitability of goods or services that are the subject of a sales offer;

B.  misrepresenting any material aspect of the performance, efficacy, nature, or central

characteristics of goods or services that are the subject of a sales offer;

C. making a false or misleading statement to induce any person to pay for goods or services; and

D. violating any provision of the TSR, 16 C.F.R. Part 310, a copy of which is attached as **Attachment A**, and the Telephone Fraud Prevention Act ("TFPA"), Utah Code, § 13-26-1 *et seq.*, a copy of which is attached as **Attachment B**.

### III.   PROHIBITION AGAINST MISREPRESENTATIONS

IT IS FURTHER ORDERED that the Corporate Defendants and Individual Defendants, their officers, agents, employees, attorneys, and all other Persons in active concert or participation with them, who receive actual notice of this Order by personal service or otherwise, whether acting directly or indirectly, in connection with the advertising, marketing, promoting, offering for sale, or sale, of any goods or services, are permanently restrained and enjoined from:

A.   Making any Earnings Claim, unless the Earnings Claim is truthful and not misleading, and, at the time such claim is made, Corporate Defendants and Individual Defendants: (1) have a reasonable basis for the claim; (2) have in their possession written materials that substantiate the claim; and (3) make the written substantiation available upon request to the consumer, potential purchaser or investor, the Receiver, and Plaintiffs;

B.   Misrepresenting or assisting others in misrepresenting, expressly or by implication, any other fact material to consumers concerning any good or service, such as:   the total costs; associated financing or credit; refund policy; any material restrictions, limitations, or conditions; or any material aspect of its performance, efficacy, nature, or central characteristics.

Page 6 of 23

C. Violating any provision of the BODA, Utah Code § 13-15-1 *et seq.*, a copy of which is attached as **Attachment C.**

## IV. INJUNCTION AGAINST SUPPRESSING COVERED COMMUNICATIONS THROUGH CONTRACT TERMS

IT IS FURTHER ORDERED that the Corporate Defendants and Individual Defendants, their officers, agents, employees, attorneys, and all other Persons in active concert or participation with them, who receive actual notice of this Order by personal service or otherwise, whether acting directly or indirectly, in connection with the advertising, marketing, promoting, offering for sale, or sale of any goods or services, are permanently restrained and enjoined from offering, attempting to enforce, or asserting the validity of, any Review-Limiting Contract Term.

Provided, however, that nothing in this Section shall: require a Defendant to publish or host the content of any person; affect any other legal duty of a party to a contract; or affect any cause of action arising from the breach of such duty.

## V. PROHIBITION ON RELEASE OF CUSTOMER INFORMATION

IT IS FURTHER ORDERED that the Corporate Defendants and Individual Defendants, their officers, agents, employees, attorneys, and all other Persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, are hereby permanently restrained and enjoined from directly or indirectly:

A. Selling, renting, leasing, transferring, or otherwise disclosing, customer information including the name, address, birth date, telephone number, email address, payment card number, bank account number, Social Security number, or other financial or identifying information of any person that any Defendant obtained in connection with any activity that

pertains to the subject matter of this Order;

        B.      Benefitting from or using the name, address, birth date, telephone number, email address, credit card number, bank account number, Social Security number, or other financial or identifying information or any data that enables access to a customer's account (including a credit card, bank account, or other financial account) of any person that any Defendant obtained prior to entry of this Order in connection with any activity that pertains to the subject matter of this Order; and

        C.      Failing to destroy such customer information in all forms in their possession, custody, or control within fifteen (15) calendar days after entry of this Order.

        Provided, however, that customer information need not be disposed of, and may be disclosed, to the extent requested by a government agency or required by law, regulation, or court order.

## VI.   MONETARY JUDGMENT

        IT IS FURTHER ORDERED that:

A.      Judgment in the amount of One Hundred Four Million Seven Hundred Thousand Dollars ($104,700,000), consisting of Sixty-Eight Million Two Hundred Thousand Dollars ($68,200,000) in favor of the Commission, and Thirty-Six Million Five Hundred Thousand Dollars ($36,500,000) in favor of the Division, is entered against Zurixx, LLC, Brand Management Holdings, LLC, CJ Seminar Holdings, LLC, Dorado Marketing and Management, LLC, Zurixx Financial, LLC-Utah, and Zurixx Financial, LLC-Puerto Rico, jointly and severally, as monetary relief.

B.      Judgment in the amount of Two Million Three Hundred Thirty-Three Thousand Three

Hundred Thirty-Three and 33/100 Dollars ($2,333,333.33) is entered in favor of Plaintiffs against Cristopher A. Cannon ("Cannon"), CAC Investment Ventures, LLC-Utah, and CAC Investment Ventures, LLC-Puerto Rico, jointly and severally, as monetary relief.

C.     Judgment in the amount of Two Million Three Hundred Thirty-Three Thousand Three Hundred Thirty-Three and 33/100 Dollars ($2,333,333.33) is entered in favor of Plaintiffs against James M. Carlson ("Carlson"), Carlson Development Group, LLC-Utah, and Carlson Development Group, LLC-Puerto Rico, jointly and severally, as monetary relief.

D.     Judgment in the amount of Two Million Three Hundred Thirty-Three Thousand Three Hundred Thirty-Three and 34/100 Dollars ($2,333,333.34) is entered in favor of Plaintiffs against Jeffrey D. Spangler ("Spangler"), JSS Investment Ventures, LLC, JSS Trust, and Relief Defendant, jointly and severally, as monetary relief.

E.     Immediately upon entry of this Order, Defendants are ordered to surrender to Plaintiffs all control, title, dominion, and interest each has to the following assets:

1.     All funds in any accounts in the name of Zurixx, LLC, Brand Management Holdings, LLC, CJ Seminar Holdings, LLC, Dorado Marketing and Management, LLC, Zurixx Financial, LLC-Utah, Zurixx Financial, LLC-Puerto Rico, and RE Cash Source, LLC ("Turnover Entities");

2.     All cash and assets held by Receiver; and

3.     All assets owned by the Turnover Entities or held by the Receiver, including any real, personal, or intellectual property, chattel, goods, instruments, equipment, fixtures, general intangibles, effects, leaseholds, contracts, mail, or other deliveries, shares or stock, securities, inventory, checks, notes, accounts, credits, receivables, insurance policies, lines

of credit, cash, trusts (including asset protection trusts), lists of consumer names and reserve funds or any other accounts associated with any payments processed by, or on behalf of, any Turnover Entity.

F.    Cannon, CAC Investment Ventures, LLC-Utah, and CAC Investment Ventures, LLC-Puerto Rico are ordered to pay to the Plaintiffs Two Million Three Hundred Thirty-Three Thousand Three Hundred Thirty-Three and 33/100 Dollars ($2,333,333.33). Such payment must be made within 90 days of entry of this Order by electronic fund transfer in accordance with instructions previously provided by a representative of the Commission.

G.    Carlson, Carlson Development Group, LLC-Utah, and Carlson Development Group, LLC-Puerto Rico are ordered to pay to the Plaintiffs Two Million Three Hundred Thirty-Three Thousand Three Hundred Thirty-Three and 33/100 Dollars ($2,333,333.33). Such payment must be made within 90 days of entry of this Order by electronic fund transfer in accordance with instructions previously provided by a representative of the Commission.

H.    Spangler, JSS Investment Ventures, LLC, JSS Trust, and Relief Defendant are ordered to pay to the Plaintiffs Two Million Three Hundred Thirty-Three Thousand Three Hundred Thirty-Three and 34/100 Dollars ($2,333,333.34). Such payment must be made within 90 days of entry of this Order by electronic fund transfer in accordance with instructions previously provided by a representative of the Commission.

I.    Defendants shall deliver or transfer the assets identified in Subsection E above to the Receiver's possession within 7 days of the entry of this Order.

J.    The Receiver shall, as soon as practicable, commence the sale of the unliquidated assets identified in Subsections E.3 and surrendered pursuant to this Order using a commercially

reasonable procedure. The Receiver shall hold the surrendered assets, and the proceeds from the

income produced by, and sale of, the unliquidated assets for future transfer to the Plaintiffs in

accordance with further instructions from the Court. The Receiver is authorized to abandon any

unliquidated asset that the Receiver determines is not economically viable or is otherwise not

practical to liquidate.

K.      Defendants relinquish dominion and all legal and equitable right, title, and interest in all

assets transferred pursuant to this Order and may not seek the return of any assets.

L.      The facts alleged in the Complaint will be taken as true, without further proof, in any

subsequent civil litigation by or on behalf of the Plaintiffs, including in a proceeding to enforce its

rights to any payment or monetary judgment pursuant to this Order, such as a nondischargeability

complaint in any bankruptcy case. The facts alleged in the Complaint will not be considered true

or established for any purpose or for any party other than Plaintiffs as set forth in this Subsection

and Subsection M below.

M.      The facts alleged in the Complaint establish all elements necessary to sustain an action

by the Plaintiffs pursuant to Section 523(a)(2)(A) of the Bankruptcy Code, 11 U.S.C.

§ 523(a)(2)(A), and this Order will have collateral estoppel effect for such purposes.

N.      Defendants acknowledge that their Taxpayer Identification Numbers (Social Security

Numbers or Employer Identification Numbers) may be used for collecting and reporting on any

delinquent amount arising out of this Order, in accordance with 31 U.S.C. §7701.

O.      All money received by the Commission pursuant to this Order may be deposited into a

fund administered by the Commission or its designee to be used for consumer redress and any

attendant expenses for the administration of any redress fund. If a representative of the

Commission, in consultation with the Division, decides that direct redress to consumers is wholly or partially impracticable or money remains after redress is completed, the Commission and may apply any remaining money for such other relief (including consumer information remedies) as it determines to be reasonably related to Defendants' practices alleged in the Complaint. Any money not used for such relief is to be deposited to the Utah Consumer Protection Education and Training Fund. Defendants have no right to challenge any actions the Commission or its representatives, or the Division or its representatives may take pursuant to this Subsection.

## VII.  MODIFICATION OF ASSET PRESERVATION

IT IS FURTHER ORDERED that the asset freeze and asset preservation provisions imposed on the Defendants by the Amended Stipulated Preliminary Injunction [ECF No. 346] remains in effect, but will be lifted for the sole purpose of transferring funds and assets to Plaintiffs and the Receiver pursuant to Section VI and will be dissolved for each Defendant upon completion of the transfers required by each Defendant pursuant to Section VI.

## VIII.  RECEIVERSHIP

IT IS FURTHER ORDERED that:

A.      Except as modified by this Section, the Receivership imposed by the Court will continue as set forth in the Amended Stipulated Preliminary Injunction [ECF No. 346].

B.      Upon approval of the Receiver's final report and request for payment, but no later than one hundred twenty (120) days after entry of the Court's approval of the Receiver's final report and request for payment, the Receivership will be terminated, and all funds remaining after payment of the Receiver's final approved payment must be remitted immediately to the Commission or its designated representative.

C.      Any party or the Receiver may request that the Court extend the Receiver's term for good cause.

## IX.  COOPERATION

IT IS FURTHER ORDERED that Defendants must fully cooperate with representatives of Plaintiffs and the Receiver in this case and in any investigation related to or associated with the transactions or the occurrences that are the subject of the Complaint.   Defendants must provide truthful and complete information, evidence, and testimony.   Defendants must appear and Corporate Defendants must cause Defendants' officers, employees, representatives, or agents to appear for interviews, discovery, hearings, trials, and any other proceedings that Plaintiffs' or Receiver's representative may reasonably request upon 5 days written notice, or other reasonable notice, at such places and times as Plaintiffs' or Receiver's representative may designate, without the service of a subpoena.

## X.   ORDER ACKNOWLEDGMENTS

IT IS FURTHER ORDERED that Defendants obtain acknowledgments of receipt of this

Order:

A.      Each Defendant, within 7 days of entry of this Order, must submit to the Commission and

the Division an acknowledgment of receipt of this Order sworn under penalty of perjury.

B.      For 3 years after entry of this Order, each Individual Defendant for any business that

such Defendant, individually or collectively with any other Defendants, is the majority owner or

controls directly or indirectly, and each Corporate Defendant, must deliver a copy of this Order to:

(1) all principals, officers, directors, and LLC managers and members; (2) all employees having

managerial responsibilities for conduct related to the subject matter of the Order and all agents

and representatives who participate in conduct related to the subject matter of the Order; and (3)

any business entity resulting from any change in structure as set forth in the Section titled

Compliance Reporting.   Delivery must occur within 7 days of entry of this Order for current

personnel.   For all others, delivery must occur before they assume their responsibilities.

C.      From each individual or entity to which a Defendant delivered a copy of this Order, that

Defendant must obtain, within 30 days, a signed and dated acknowledgment of receipt of this

Order.

## XI. COMPLIANCE REPORTING

IT IS FURTHER ORDERED that Defendants make timely submissions to the Plaintiffs:

A.      One year after entry of this Order, each Defendant must submit a compliance report,

sworn under penalty of perjury:

1.      Each Defendant must:   (a) identify the primary physical, postal, and email address and

Page 14 of 23

telephone number, as designated points of contact, which representatives of the Commission or the Division may use to communicate with Defendant; (b) identify all of that Defendant's businesses by all of their names, telephone numbers, and physical, postal, email, and Internet addresses; (c) describe the activities of each business, including the goods and services offered, the means of advertising, marketing, and sales, and the involvement of any other Defendant (which Individual Defendants must describe if they know or should know due to their own involvement); (d) describe in detail whether and how that Defendant is in compliance with each Section of this Order; and (e) provide a copy of each Order Acknowledgment obtained pursuant to this Order, unless previously submitted to the Commission and the Division.

2.     Additionally, each Individual Defendant must:   (a) identify all telephone numbers and all physical, postal, email and Internet addresses, including all residences; (b) identify all business activities, including any business for which such Defendant performs services whether as an employee or otherwise and any entity in which such Defendant has any ownership interest; and (c) describe in detail such Defendant's involvement in each such business, including title, role, responsibilities, participation, authority, control, and any ownership.

B.     For 10 years after entry of this Order, each Defendant must submit a compliance notice, sworn under penalty of perjury, within 14 days of any change in the following:

1.     Each Defendant must report any change in:   (a) any designated point of contact; or (b) the structure of any Corporate Defendant or any entity that Defendant has any ownership interest in or controls directly or indirectly that may affect compliance obligations arising under this Order, including:   creation, merger, sale, or dissolution of the entity or any subsidiary, parent, or affiliate that engages in any acts or practices subject to this Order.

2.      Additionally, each Individual Defendant must report any change in: (a) name, including aliases or fictitious name, or residence address; or (b) title or role in any business activity, including any business for which such Defendant performs services whether as an employee or otherwise and any entity in which such Defendant has any ownership interest, and identify the name, physical address, and any Internet address of the business or entity.

C.      Each Defendant must submit to the Commission and the Division notice of the filing of any bankruptcy petition, insolvency proceeding, or similar proceeding by or against such Defendant within 14 days of its filing.

D.      Any submission to the Plaintiffs required by this Order to be sworn under penalty of perjury must be true and accurate and comply with 28 U.S.C. § 1746, such as by concluding: "I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on: _____" and supplying the date, signatory's full name, title (if applicable), and signature.

E.      Unless otherwise directed by a Commission representative in writing, all submissions to the Commission pursuant to this Order must be emailed to DEbrief@ftc.gov or sent by overnight courier (not the U.S. Postal Service) to: Associate Director for Enforcement, Bureau of Consumer Protection, Federal Trade Commission, 600 Pennsylvania Avenue NW, Washington, DC 20580. The subject line must begin: FTC v. Zurixx, LLC, et al. (Name of the Defendant)

F.      Unless otherwise directed by a Division representative in writing, all submissions to the Division pursuant to this Order must be emailed to consumerprotection@utah.gov or sent by overnight courier (not the U.S. Postal Service) to: Director, Utah Division of Consumer Protection, Heber M. Wells Building, 160 East 300 South, P.O. Box 146704, Salt Lake City, Utah

Page 16 of 23

84114-6704. The subject line must begin: FTC v. Zurixx, LLC, et al. (Name of Defendant).

## XII. RECORDKEEPING

IT IS FURTHER ORDERED that Defendants must create certain records for 10 years after entry of the Order, and retain each such record for 5 years. Specifically, Corporate Defendant and each Individual Defendant for any business that such Defendant, individually or collectively with any other Defendants, is a majority owner or controls directly or indirectly, must create and retain the following records:

A.  accounting records showing the revenues from all goods or services sold;

B.  personnel records showing, for each person providing services, whether as an employee or otherwise, that person's:  name; addresses; telephone numbers; job title or position; dates of service; and (if applicable) the reason for termination;

C.  records of all consumer complaints and refund requests, whether received directly or indirectly, such as through a third party, and any response;

D.  all records necessary to demonstrate full compliance with each provision of this Order, including all submissions to the Commission and the Division; and

E.  a copy of each unique advertisement or other marketing material.

## XIII. COMPLIANCE MONITORING

IT IS FURTHER ORDERED that, for the purpose of monitoring Defendants' compliance with this Order and any failure to transfer any assets as required by this Order:

A.  Within 14 days of receipt of a written request from a representative of the Commission or the Division, each Defendant must:  submit additional compliance reports or other requested information, which must be sworn under penalty of perjury; appear for depositions; and produce

documents for inspection and copying. The Commission and the Division are also authorized to obtain discovery, without further leave of court, using any of the procedures prescribed by Federal Rules of Civil Procedure 29, 30 (including telephonic and remote depositions), 31, 33, 34, 36, 45, and 69.

B.      For matters concerning this Order, the Commission and the Division are authorized to communicate directly with each Defendant. Defendant must permit representatives of the Commission and the Division to interview any employee or other person affiliated with any Defendant who has agreed to such an interview. The person interviewed may have counsel present.

C.      The Commission and the Division may use all other lawful means, including posing, through its representatives as consumers, suppliers, or other individuals or entities, to Defendants or any individual or entity affiliated with Defendants, without the necessity of identification or prior notice. Nothing in this Order limits the Commission's lawful use of compulsory process, pursuant to Sections 9 and 20 of the FTC Act, 15 U.S.C. §§ 49, 57b-1.

D.      Upon written request from a representative of the Commission or the Division, any consumer reporting agency must furnish consumer reports concerning Individual Defendants, Relief Defendant, and JSS Trustee Defendant pursuant to Section 604(1) of the Fair Credit Reporting Act, 15 U.S.C. §1681b(a)(1).

## XIV. RETENTION OF JURISDICTION

IT IS FURTHER ORDERED that this Court retains jurisdiction of this matter for purposes

of construction, modification, and enforcement of this Order.

**SO ORDERED this 15th day of February 2022.**

UNITED STATES DISTRICT JUDGE
HON. DALE A. KIMBALL

**IT IS SO STIPULATED AND AGREED:**

**FOR PLAINTIFF:**

**FEDERAL TRADE COMMISSION**

**/s/ Joshua A. Doan**         Date: 2/14/2022

Roberto Anguizola
Joshua Doan
Thomas Harris
(Each appearing per DUCivR 83-1.1(d)(1))
Federal Trade Commission
600 Pennsylvania Ave. NW, CC-8528
Tel: (202) 326-3284 (R. Anguizola
Email: ranguizola@ftc.gov
Email: jdoan@ftc.gov
Email: agrier@ftc.gov
Email: tharris1@ftc.gov

Attorneys for Plaintiff
FEDERAL TRADE COMMISSION


**UTAH DIVISION OF CONSUMER PROTECTION**

**/s/ Robert G. Wing (by JAD w/ perm.)**     Date: 2/14/2022

Robert G. Wing (4445)
Thomas M. Melton (4999)
Assistant Attorneys General
Utah Attorney General's Office
160 East 300 South, Fifth Floor
Salt Lake City, Utah 84114
Tel: (801) 366-0310
Email: rwing@agutah.gov
Email: tmelton@agutah.gov

Attorneys for Plaintiff
UTAH DIVISION OF CONSUMER
PROTECTION

**FOR DEFENDANTS:**

Date: 12/13/21

Z. Ryan Pahnke
RAY QUINNEY & NEBEKER, PC
36 South State Street, Suite 1400
PO Box 45385
Salt Lake City, UT 84145
Telephone: 801-323-3327
Email: rpahnke@rqn.com

Date: 12.13.21

Eric Benson
POTTER HANDY LLP
2700 Homestead Rd., Suite 60
Park City, UT 84908
Telephone: 858-375-7385
Email: ericb@potterhandy.com

Date: 12/15/2021

D. Loren Washburn
ARMSTRONG TEASDALE
201 South Main St., Suite 2400
Salt Lake City, UT 84111
Telephone: 800-243-5070
Email: lwashburn@atllp.com

Date: 12-13-21

Angel L. Reyes, III
Ryan J. Browne
REYES BROWNE REILLEY
8222 Douglas Avenue, Suite 400 Dallas, TX 75225
Telephone: (214) 526-7900
Fax: (214) 526-7910
Email:angel@reyeslaw.com
Email:ryan@reyeslaw.com

*Attorneys for Zurixx, LLC, Brand Management Holdings, LLC,*

Page 21 of 23

*CAC Investment Ventures, LLC-Utah,*
*CAC Investment Ventures, LLC-Puerto Rico,*
*Carlson Development Group, LLC-Utah,*
*Carlson Development Group, LLC-Puerto Rico,*
*CJ Seminar Holdings, LLC, Dorado Marketing and Management, LLC,*
*Zurixx Financial, LLC-Utah, Zurixx Financial, LLC-Puerto Rico,*
*Cristopher A Cannon, James M. Carlson, and Jeffrey D. Spangler*

Date: 12/15/2021

Brennan Moss
Michael Gehret
Tanner Camp
ARMSTRONG TEASDALE
257 East 200 South, Suite 350
Salt Lake City, UT  84111
Telephone:  720-613-7088
Email:  bmoss@atllp.com
Email:  mgehret@atllip.com
Email:  tcamp@atllp.com

*Attorneys for JSS Investment Ventures, LLC,*
*JSS Trust, Gerald D. Spangler, and*
*Relief Defendant Stephenie J. Spangler*

**DEFENDANTS:**

Date:  12/13/2021

Cristopher A. Cannon, individually, and as
an officer of Zurixx, LLC and Dorado Marketing and
Management, LLC, a manager of CJ Seminar Holdings, LLC,
and a manager and member of CAC Investment Ventures LLC-Utah
and CAC Investment Ventures LLC-Puerto Rico

Date:  12 / 13 /21

James M. Carlson, individually, and as
chief executive officer of Zurixx, LLC, and Brand
Management Holdings, LLC, an officer of

Page 22 of 23

Dorado Marketing and Management, LLC,
and a manager and member of Carlson Development Group, LLC-Utah
and Carlson Development Group, LLC-Puerto Rico, and a control person of Zurixx Financial,
LLC-Utah and Zurixx-Financial, LLC- Puerto Rico.

_____     Date: 12/13/21
Jeffrey D. Spangler, individually, and as officer of
Zurixx, LLC and Dorado Marketing and Management, LLC,
a manager of CJ Seminar Holdings, LLC, , and the grantor of JSS Trust

_____     Date: 12/15/21
Gerald D. Spangler, as trustee for the JSS Trust, and
as a manager of JSS Investment Ventures, LLC

**RELIEF DEFENDANT:**

_____     Date:
Stephenie J. Spangler, individually

Page 23 of 23

Dorado Marketing and Management, LLC,
and a manager and member of Carlson Development Group, LLC-Utah
and Carlson Development Group, LLC-Puerto Rico, and a control person of Zurixx Financial,
LLC-Utah and Zurixx-Financial, LLC- Puerto Rico.

Date: 12/13/21

Jeffrey D. Spangler, individually, and as officer of
Zurixx, LLC and Dorado Marketing and Management, LLC,
a manager of CJ Seminar Holdings, LLC, , and the grantor of JSS Trust

Date: _____

Gerald D. Spangler, as trustee for the JSS Trust, and
as a manager of JSS Investment Ventures, LLC

**RELIEF DEFENDANT:**

Date: 12/15/2021

Stephenie J. Spangler, individually

Attachment A

Telemarketing Sales Rule

**Federal Trade Commission** §310.2

APPENDIX A TO PART 309—FIGURES FOR PART 309



Figure 1

Figure 2



Figure 3

[60 FR 26955, May 19, 1995, as amended at 69 FR 55339, Sept. 14, 2004; 78 FR 23835, Apr. 23, 2013]

## PART 310—TELEMARKETING SALES RULE

Sec.
310.1  Scope of regulations in this part.
310.2  Definitions.
310.3  Deceptive telemarketing acts or practices.
310.4  Abusive telemarketing acts or practices.
310.5  Recordkeeping requirements.
310.6  Exemptions.
310.7  Actions by states and private persons.
310.8  Fee for access to the National Do Not Call Registry.
310.9  Severability.

AUTHORITY: 15 U.S.C. 6101–6108.

SOURCE: 75 FR 48516, Aug. 10, 2010, unless otherwise noted.

### §310.1  Scope of regulations in this part.

This part implements the Telemarketing and Consumer Fraud and Abuse Prevention Act, 15 U.S.C. 6101-6108, as amended.

### §310.2  Definitions.

(a) *Acquirer* means a business organization, financial institution, or an agent of a business organization or financial institution that has authority from an organization that operates or licenses a credit card system to authorize merchants to accept, transmit, or process payment by credit card through the credit card system for money, goods or services, or anything else of value.

385

(b) *Attorney General* means the chief legal officer of a state.

(c) *Billing information* means any data that enables any person to access a customer's or donor's account, such as a credit card, checking, savings, share or similar account, utility bill, mortgage loan account, or debit card.

(d) *Caller identification service* means a service that allows a telephone subscriber to have the telephone number, and, where available, name of the calling party transmitted contemporaneously with the telephone call, and displayed on a device in or connected to the subscriber's telephone.

(e) *Cardholder* means a person to whom a credit card is issued or who is authorized to use a credit card on behalf of or in addition to the person to whom the credit card is issued.

(f) *Cash-to-cash money transfer* means the electronic (as defined in section 106(2) of the Electronic Signatures in Global and National Commerce Act (15 U.S.C. 7006(2)) transfer of the value of cash received from one person to another person in a different location that is sent by a money transfer provider and received in the form of cash. For purposes of this definition, *money transfer provider* means any person or financial institution that provides cash-to-cash money transfers for a person in the normal course of its business, whether or not the person holds an account with such person or financial institution. The term *cash-to-cash money transfer* includes a remittance transfer, as defined in section 919(g)(2) of the Electronic Fund Transfer Act (''EFTA''), 15 U.S.C. 1693a, that is a cash-to-cash transaction; however it does not include any transaction that is:

(1) An electronic fund transfer as defined in section 903 of the EFTA;

(2) Covered by Regulation E, 12 CFR 1005.20, pertaining to gift cards; or

(3) Subject to the Truth in Lending Act, 15 U.S.C. 1601 *et seq.*

(g) *Cash reload mechanism* is a device, authorization code, personal identification number, or other security measure that makes it possible for a person to convert cash into an electronic (as defined in section 106(2) of the Electronic Signatures in Global and National Commerce Act (15 U.S.C. 7006(2)) form

that can be used to add funds to a general-use prepaid card, as defined in Regulation E, 12 CFR 1005.2, or an account with a payment intermediary. For purposes of this definition, a cash reload mechanism is not itself a general-use prepaid debit card or a swipe reload process or similar method in which funds are added directly onto a person's own general-use prepaid card or account with a payment intermediary.

(h) *Charitable contribution* means any donation or gift of money or any other thing of value.

(i) *Commission* means the Federal Trade Commission.

(j) *Credit* means the right granted by a creditor to a debtor to defer payment of debt or to incur debt and defer its payment.

(k) *Credit card* means any card, plate, coupon book, or other credit device existing for the purpose of obtaining money, property, labor, or services on credit.

(l) *Credit card sales draft* means any record or evidence of a credit card transaction.

(m) *Credit card system* means any method or procedure used to process credit card transactions involving credit cards issued or licensed by the operator of that system.

(n) *Customer* means any person who is or may be required to pay for goods or services offered through telemarketing.

(o) *Debt relief service* means any program or service represented, directly or by implication, to renegotiate, settle, or in any way alter the terms of payment or other terms of the debt between a person and one or more unsecured creditors or debt collectors, including, but not limited to, a reduction in the balance, interest rate, or fees owed by a person to an unsecured creditor or debt collector.

(p) *Donor* means any person solicited to make a charitable contribution.

(q) *Established business relationship* means a relationship between a seller and a consumer based on:

(1) the consumer's purchase, rental, or lease of the seller's goods or services or a financial transaction between the

386

consumer and seller, within the eighteen (18) months immediately preceding the date of a telemarketing call; or

(2) the consumer's inquiry or application regarding a product or service offered by the seller, within the three (3) months immediately preceding the date of a telemarketing call.

(r) *Free-to-pay conversion* means, in an offer or agreement to sell or provide any goods or services, a provision under which a customer receives a product or service for free for an initial period and will incur an obligation to pay for the product or service if he or she does not take affirmative action to cancel before the end of that period.

(s) *Investment opportunity* means anything, tangible or intangible, that is offered, offered for sale, sold, or traded based wholly or in part on representations, either express or implied, about past, present, or future income, profit, or appreciation.

(t) *Material* means likely to affect a person's choice of, or conduct regarding, goods or services or a charitable contribution.

(u) *Merchant* means a person who is authorized under a written contract with an acquirer to honor or accept credit cards, or to transmit or process for payment credit card payments, for the purchase of goods or services or a charitable contribution.

(v) *Merchant agreement* means a written contract between a merchant and an acquirer to honor or accept credit cards, or to transmit or process for payment credit card payments, for the purchase of goods or services or a charitable contribution.

(w) *Negative option feature* means, in an offer or agreement to sell or provide any goods or services, a provision under which the customer's silence or failure to take an affirmative action to reject goods or services or to cancel the agreement is interpreted by the seller as acceptance of the offer.

(x) *Outbound telephone call* means a telephone call initiated by a telemarketer to induce the purchase of goods or services or to solicit a charitable contribution.

(y) *Person* means any individual, group, unincorporated association, limited or general partnership, corporation, or other business entity.

(z) *Preacquired account information* means any information that enables a seller or telemarketer to cause a charge to be placed against a customer's or donor's account without obtaining the account number directly from the customer or donor during the telemarketing transaction pursuant to which the account will be charged.

(aa) *Prize* means anything offered, or purportedly offered, and given, or purportedly given, to a person by chance. For purposes of this definition, chance exists if a person is guaranteed to receive an item and, at the time of the offer or purported offer, the telemarketer does not identify the specific item that the person will receive.

(bb) *Prize promotion* means:

(1) A sweepstakes or other game of chance; or

(2) An oral or written express or implied representation that a person has won, has been selected to receive, or may be eligible to receive a prize or purported prize.

(cc) *Remotely created payment order* means any payment instruction or order drawn on a person's account that is created by the payee or the payee's agent and deposited into or cleared through the check clearing system. The term includes, without limitation, a "remotely created check," as defined in Regulation CC, Availability of Funds and Collection of Checks, 12 CFR 229.2(fff), but does not include a payment order cleared through an Automated Clearinghouse (ACH) Network or subject to the Truth in Lending Act, 15 U.S.C. 1601 *et seq.*, and Regulation Z, 12 CFR part 1026.

(dd) *Seller* means any person who, in connection with a telemarketing transaction, provides, offers to provide, or arranges for others to provide goods or services to the customer in exchange for consideration.

(ee) *State* means any state of the United States, the District of Columbia, Puerto Rico, the Northern Mariana Islands, and any territory or possession of the United States.

(ff) *Telemarketer* means any person who, in connection with telemarketing, initiates or receives telephone calls to or from a customer or donor.

(gg) *Telemarketing* means a plan, program, or campaign which is conducted

387

to induce the purchase of goods or services or a charitable contribution, by use of one or more telephones and which involves more than one interstate telephone call. The term does not include the solicitation of sales through the mailing of a catalog which: contains a written description or illustration of the goods or services offered for sale; includes the business address of the seller; includes multiple pages of written material or illustrations; and has been issued not less frequently than once a year, when the person making the solicitation does not solicit customers by telephone but only receives calls initiated by customers in response to the catalog and during those calls takes orders only without further solicitation. For purposes of the previous sentence, the term "further solicitation" does not include providing the customer with information about, or attempting to sell, any other item included in the same catalog which prompted the customer's call or in a substantially similar catalog.

(hh) *Upselling* means soliciting the purchase of goods or services following an initial transaction during a single telephone call. The upsell is a separate telemarketing transaction, not a continuation of the initial transaction. An "external upsell" is a solicitation made by or on behalf of a seller different from the seller in the initial transaction, regardless of whether the initial transaction and the subsequent solicitation are made by the same telemarketer. An "internal upsell" is a solicitation made by or on behalf of the same seller as in the initial transaction, regardless of whether the initial transaction and subsequent solicitation are made by the same telemarketer.

[75 FR 48516, Aug. 10, 2010, as amended at 80 FR 77557, Dec. 14, 2015]

## § 310.3  Deceptive telemarketing acts or practices.

(a) *Prohibited deceptive telemarketing acts or practices.* It is a deceptive telemarketing act or practice and a violation of this Rule for any seller or telemarketer to engage in the following conduct:

(1) Before a customer consents to pay [659] for goods or services offered, failing to disclose truthfully, in a clear and conspicuous manner, the following material information:

(i) The total costs to purchase, receive, or use, and the quantity of, any goods or services that are the subject of the sales offer; [660]

(ii) All material restrictions, limitations, or conditions to purchase, receive, or use the goods or services that are the subject of the sales offer;

(iii) If the seller has a policy of not making refunds, cancellations, exchanges, or repurchases, a statement informing the customer that this is the seller's policy; or, if the seller or telemarketer makes a representation about a refund, cancellation, exchange, or repurchase policy, a statement of all material terms and conditions of such policy;

(iv) In any prize promotion, the odds of being able to receive the prize, and, if the odds are not calculable in advance, the factors used in calculating the odds; that no purchase or payment is required to win a prize or to participate in a prize promotion and that any purchase or payment will not increase the person's chances of winning; and the no-purchase/no-payment method of participating in the prize promotion with either instructions on how to participate or an address or local or toll-free telephone number to which customers may write or call for information on how to participate;

---

[659] When a seller or telemarketer uses, or directs a customer to use, a courier to transport payment, the seller or telemarketer must make the disclosures required by § 310.3(a)(1) before sending a courier to pick up payment or authorization for payment, or directing a customer to have a courier pick up payment or authorization for payment. In the case of debt relief services, the seller or telemarketer must make the disclosures required by § 310.3(a)(1) before the consumer enrolls in an offered program.

[660] For offers of consumer credit products subject to the Truth in Lending Act, 15 U.S.C. 1601 *et seq.,* and Regulation Z, 12 CFR 226, compliance with the disclosure requirements under the Truth in Lending Act and Regulation Z shall constitute compliance with § 310.3(a)(1)(i) of this Rule.

**Federal Trade Commission**                                          **§ 310.3**

(v) All material costs or conditions to receive or redeem a prize that is the subject of the prize promotion;

(vi) In the sale of any goods or services represented to protect, insure, or otherwise limit a customer's liability in the event of unauthorized use of the customer's credit card, the limits on a cardholder's liability for unauthorized use of a credit card pursuant to 15 U.S.C. 1643;

(vii) If the offer includes a negative option feature, all material terms and conditions of the negative option feature, including, but not limited to, the fact that the customer's account will be charged unless the customer takes an affirmative action to avoid the charge(s), the date(s) the charge(s) will be submitted for payment, and the specific steps the customer must take to avoid the charge(s); and

(viii) In the sale of any debt relief service:

(A) the amount of time necessary to achieve the represented results, and to the extent that the service may include a settlement offer to any of the customer's creditors or debt collectors, the time by which the debt relief service provider will make a bona fide settlement offer to each of them;

(B) to the extent that the service may include a settlement offer to any of the customer's creditors or debt collectors, the amount of money or the percentage of each outstanding debt that the customer must accumulate before the debt relief service provider will make a bona fide settlement offer to each of them;

(C) to the extent that any aspect of the debt relief service relies upon or results in the customer's failure to make timely payments to creditors or debt collectors, that the use of the debt relief service will likely adversely affect the customer's creditworthiness, may result in the customer being subject to collections or sued by creditors or debt collectors, and may increase the amount of money the customer owes due to the accrual of fees and interest; and

(D) to the extent that the debt relief service requests or requires the customer to place funds in an account at an insured financial institution, that the customer owns the funds held in the account, the customer may withdraw from the debt relief service at any time without penalty, and, if the customer withdraws, the customer must receive all funds in the account, other than funds earned by the debt relief service in compliance with § 310.4(a)(5)(i)(A) through (C).

(2) Misrepresenting, directly or by implication, in the sale of goods or services any of the following material information:

(i) The total costs to purchase, receive, or use, and the quantity of, any goods or services that are the subject of a sales offer;

(ii) Any material restriction, limitation, or condition to purchase, receive, or use goods or services that are the subject of a sales offer;

(iii) Any material aspect of the performance, efficacy, nature, or central characteristics of goods or services that are the subject of a sales offer;

(iv) Any material aspect of the nature or terms of the seller's refund, cancellation, exchange, or repurchase policies;

(v) Any material aspect of a prize promotion including, but not limited to, the odds of being able to receive a prize, the nature or value of a prize, or that a purchase or payment is required to win a prize or to participate in a prize promotion;

(vi) Any material aspect of an investment opportunity including, but not limited to, risk, liquidity, earnings potential, or profitability;

(vii) A seller's or telemarketer's affiliation with, or endorsement or sponsorship by, any person or government entity;

(viii) That any customer needs offered goods or services to provide protections a customer already has pursuant to 15 U.S.C. 1643;

(ix) Any material aspect of a negative option feature including, but not limited to, the fact that the customer's account will be charged unless the customer takes an affirmative action to avoid the charge(s), the date(s) the charge(s) will be submitted for payment, and the specific steps the customer must take to avoid the charge(s); or

389

(x) Any material aspect of any debt relief service, including, but not limited to, the amount of money or the percentage of the debt amount that a customer may save by using such service; the amount of time necessary to achieve the represented results; the amount of money or the percentage of each outstanding debt that the customer must accumulate before the provider of the debt relief service will initiate attempts with the customer's creditors or debt collectors or make a bona fide offer to negotiate, settle, or modify the terms of the customer's debt; the effect of the service on a customer's creditworthiness; the effect of the service on collection efforts of the customer's creditors or debt collectors; the percentage or number of customers who attain the represented results; and whether a debt relief service is offered or provided by a non-profit entity.

(3) Causing billing information to be submitted for payment, or collecting or attempting to collect payment for goods or services or a charitable contribution, directly or indirectly, without the customer's or donor's express verifiable authorization, except when the method of payment used is a credit card subject to protections of the Truth in Lending Act and Regulation Z,[661] or a debit card subject to the protections of the Electronic Fund Transfer Act and Regulation E.[662] Such authorization shall be deemed verifiable if any of the following means is employed:

(i) Express written authorization by the customer or donor, which includes the customer's or donor's signature;[663]

(ii) Express oral authorization which is audio-recorded and made available upon request to the customer or donor, and the customer's or donor's bank or other billing entity, and which evidences clearly both the customer's or donor's authorization of payment for the goods or services or charitable contribution that are the subject of the telemarketing transaction and the customer's or donor's receipt of all of the following information:

(A) An accurate description, clearly and conspicuously stated, of the goods or services or charitable contribution for which payment authorization is sought;

(B) The number of debits, charges, or payments (if more than one);

(C) The date(s) the debit(s), charge(s), or payment(s) will be submitted for payment;

(D) The amount(s) of the debit(s), charge(s), or payment(s);

(E) The customer's or donor's name;

(F) The customer's or donor's billing information, identified with sufficient specificity such that the customer or donor understands what account will be used to collect payment for the goods or services or charitable contribution that are the subject of the telemarketing transaction;

(G) A telephone number for customer or donor inquiry that is answered during normal business hours; and

(H) The date of the customer's or donor's oral authorization; or

(iii) Written confirmation of the transaction, identified in a clear and conspicuous manner as such on the outside of the envelope, sent to the customer or donor via first class mail prior to the submission for payment of the customer's or donor's billing information, and that includes all of the information contained in §§ 310.3(a)(3)(ii)(A)-(G) and a clear and conspicuous statement of the procedures by which the customer or donor can obtain a refund from the seller or telemarketer or charitable organization in the event the confirmation is inaccurate; provided, however, that this means of authorization shall not be deemed verifiable in instances in which goods or services are offered in a transaction involving a free-to-pay conversion and preacquired account information.

(4) Making a false or misleading statement to induce any person to pay for goods or services or to induce a charitable contribution.

---

[661] Truth in Lending Act, 15 U.S.C. 1601 *et seq.*, and Regulation Z, 12 CFR part 226.

[662] Electronic Fund Transfer Act, 15 U.S.C. 1693 *et seq.*, and Regulation E, 12 CFR part 205.

[663] For purposes of this Rule, the term ''signature'' shall include an electronic or digital form of signature, to the extent that such form of signature is recognized as a valid signature under applicable federal law or state contract law.

**Federal Trade Commission** §310.4

(b) *Assisting and facilitating.* It is a deceptive telemarketing act or practice and a violation of this Rule for a person to provide substantial assistance or support to any seller or telemarketer when that person knows or consciously avoids knowing that the seller or telemarketer is engaged in any act or practice that violates §§310.3(a), (c) or (d), or §310.4 of this Rule.

(c) *Credit card laundering.* Except as expressly permitted by the applicable credit card system, it is a deceptive telemarketing act or practice and a violation of this Rule for:

(1) A merchant to present to or deposit into, or cause another to present to or deposit into, the credit card system for payment, a credit card sales draft generated by a telemarketing transaction that is not the result of a telemarketing credit card transaction between the cardholder and the merchant;

(2) Any person to employ, solicit, or otherwise cause a merchant, or an employee, representative, or agent of the merchant, to present to or deposit into the credit card system for payment, a credit card sales draft generated by a telemarketing transaction that is not the result of a telemarketing credit card transaction between the cardholder and the merchant; or

(3) Any person to obtain access to the credit card system through the use of a business relationship or an affiliation with a merchant, when such access is not authorized by the merchant agreement or the applicable credit card system.

(d) *Prohibited deceptive acts or practices in the solicitation of charitable contributions.* It is a fraudulent charitable solicitation, a deceptive telemarketing act or practice, and a violation of this Rule for any telemarketer soliciting charitable contributions to misrepresent, directly or by implication, any of the following material information:

(1) The nature, purpose, or mission of any entity on behalf of which a charitable contribution is being requested;

(2) That any charitable contribution is tax deductible in whole or in part;

(3) The purpose for which any charitable contribution will be used;

(4) The percentage or amount of any charitable contribution that will go to

a charitable organization or to any particular charitable program;

(5) Any material aspect of a prize promotion including, but not limited to: the odds of being able to receive a prize; the nature or value of a prize; or that a charitable contribution is required to win a prize or to participate in a prize promotion; or

(6) A charitable organization's or telemarketer's affiliation with, or endorsement or sponsorship by, any person or government entity.

[75 FR 48516, Aug. 10, 2010, as amended at 80 FR 77558, Dec. 14, 2015]

§310.4 **Abusive telemarketing acts or practices.**

(a) *Abusive conduct generally.* It is an abusive telemarketing act or practice and a violation of this Rule for any seller or telemarketer to engage in the following conduct:

(1) Threats, intimidation, or the use of profane or obscene language;

(2) Requesting or receiving payment of any fee or consideration for goods or services represented to remove derogatory information from, or improve, a person's credit history, credit record, or credit rating until:

(i) The time frame in which the seller has represented all of the goods or services will be provided to that person has expired; and

(ii) The seller has provided the person with documentation in the form of a consumer report from a consumer reporting agency demonstrating that the promised results have been achieved, such report having been issued more than six months after the results were achieved. Nothing in this Rule should be construed to affect the requirement in the Fair Credit Reporting Act, 15 U.S.C. 1681, that a consumer report may only be obtained for a specified permissible purpose;

(3) Requesting or receiving payment of any fee or consideration from a person for goods or services represented to recover or otherwise assist in the return of money or any other item of value paid for by, or promised to, that person in a previous transaction, until seven (7) business days after such money or other item is delivered to that person. This provision shall not

391

apply to goods or services provided to a person by a licensed attorney;

(4) Requesting or receiving payment of any fee or consideration in advance of obtaining a loan or other extension of credit when the seller or telemarketer has guaranteed or represented a high likelihood of success in obtaining or arranging a loan or other extension of credit for a person;

(5)(i) Requesting or receiving payment of any fee or consideration for any debt relief service until and unless:

(A) The seller or telemarketer has renegotiated, settled, reduced, or otherwise altered the terms of at least one debt pursuant to a settlement agreement, debt management plan, or other such valid contractual agreement executed by the customer;

(B) The customer has made at least one payment pursuant to that settlement agreement, debt management plan, or other valid contractual agreement between the customer and the creditor or debt collector; and

(C) To the extent that debts enrolled in a service are renegotiated, settled, reduced, or otherwise altered individually, the fee or consideration either:

(*1*) Bears the same proportional relationship to the total fee for renegotiating, settling, reducing, or altering the terms of the entire debt balance as the individual debt amount bears to the entire debt amount. The individual debt amount and the entire debt amount are those owed at the time the debt was enrolled in the service; or

(*2*) Is a percentage of the amount saved as a result of the renegotiation, settlement, reduction, or alteration. The percentage charged cannot change from one individual debt to another. The amount saved is the difference between the amount owed at the time the debt was enrolled in the service and the amount actually paid to satisfy the debt.

(ii) Nothing in § 310.4(a)(5)(i) prohibits requesting or requiring the customer to place funds in an account to be used for the debt relief provider's fees and for payments to creditors or debt collectors in connection with the renegotiation, settlement, reduction, or other alteration of the terms of payment or other terms of a debt, provided that:

(A) The funds are held in an account at an insured financial institution;

(B) The customer owns the funds held in the account and is paid accrued interest on the account, if any;

(C) The entity administering the account is not owned or controlled by, or in any way affiliated with, the debt relief service;

(D) The entity administering the account does not give or accept any money or other compensation in exchange for referrals of business involving the debt relief service; and

(E) The customer may withdraw from the debt relief service at any time without penalty, and must receive all funds in the account, other than funds earned by the debt relief service in compliance with § 310.4(a)(5)(i)(A) through (C), within seven (7) business days of the customer's request.

(6) Disclosing or receiving, for consideration, unencrypted consumer account numbers for use in telemarketing; provided, however, that this paragraph shall not apply to the disclosure or receipt of a customer's or donor's billing information to process a payment for goods or services or a charitable contribution pursuant to a transaction;

(7) Causing billing information to be submitted for payment, directly or indirectly, without the express informed consent of the customer or donor. In any telemarketing transaction, the seller or telemarketer must obtain the express informed consent of the customer or donor to be charged for the goods or services or charitable contribution and to be charged using the identified account. In any telemarketing transaction involving preacquired account information, the requirements in paragraphs (a)(7)(i) through (ii) of this section must be met to evidence express informed consent.

(i) In any telemarketing transaction involving preacquired account information and a free-to-pay conversion feature, the seller or telemarketer must:

(A) Obtain from the customer, at a minimum, the last four (4) digits of the account number to be charged;

(B) Obtain from the customer his or her express agreement to be charged for the goods or services and to be

**Federal Trade Commission** §310.4

charged using the account number pursuant to paragraph (a)(7)(i)(A) of this section; and,

(C) Make and maintain an audio recording of the entire telemarketing transaction.

(ii) In any other telemarketing transaction involving preacquired account information not described in paragraph (a)(7)(i) of this section, the seller or telemarketer must:

(A) At a minimum, identify the account to be charged with sufficient specificity for the customer or donor to understand what account will be charged; and

(B) Obtain from the customer or donor his or her express agreement to be charged for the goods or services and to be charged using the account number identified pursuant to paragraph (a)(7)(ii)(A) of this section;

(8) Failing to transmit or cause to be transmitted the telephone number, and, when made available by the telemarketer's carrier, the name of the telemarketer, to any caller identification service in use by a recipient of a telemarketing call; provided that it shall not be a violation to substitute (for the name and phone number used in, or billed for, making the call) the name of the seller or charitable organization on behalf of which a telemarketing call is placed, and the seller's or charitable organization's customer or donor service telephone number, which is answered during regular business hours;

(9) Creating or causing to be created, directly or indirectly, a remotely created payment order as payment for goods or services offered or sold through telemarketing or as a charitable contribution solicited or sought through telemarketing; or

(10) Accepting from a customer or donor, directly or indirectly, a cash-to-cash money transfer or cash reload mechanism as payment for goods or services offered or sold through telemarketing or as a charitable contribution solicited or sought through telemarketing.

(b) *Pattern of calls.* (1) It is an abusive telemarketing act or practice and a violation of this Rule for a telemarketer to engage in, or for a seller

to cause a telemarketer to engage in, the following conduct:

(i) Causing any telephone to ring, or engaging any person in telephone conversation, repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number;

(ii) Denying or interfering in any way, directly or indirectly, with a person's right to be placed on any registry of names and/or telephone numbers of persons who do not wish to receive outbound telephone calls established to comply with paragraph (b)(1)(iii)(A) of this section, including, but not limited to, harassing any person who makes such a request; hanging up on that person; failing to honor the request; requiring the person to listen to a sales pitch before accepting the request; assessing a charge or fee for honoring the request; requiring a person to call a different number to submit the request; and requiring the person to identify the seller making the call or on whose behalf the call is made;

(iii) Initiating any outbound telephone call to a person when:

(A) That person previously has stated that he or she does not wish to receive an outbound telephone call made by or on behalf of the seller whose goods or services are being offered or made on behalf of the charitable organization for which a charitable contribution is being solicited; or

(B) That person's telephone number is on the "do-not-call" registry, maintained by the Commission, of persons who do not wish to receive outbound telephone calls to induce the purchase of goods or services unless the seller or telemarketer:

(*1*) Can demonstrate that the seller has obtained the express agreement, in writing, of such person to place calls to that person. Such written agreement shall clearly evidence such person's authorization that calls made by or on behalf of a specific party may be placed to that person, and shall include the telephone number to which the calls may be placed and the signature [664] of that person; or

---

[664] For purposes of this Rule, the term "signature" shall include an electronic or digital form of signature, to the extent that such form of signature is recognized as a
*Continued*

(2) Can demonstrate that the seller has an established business relationship with such person, and that person has not stated that he or she does not wish to receive outbound telephone calls under paragraph (b)(1)(iii)(A) of this section; or

(iv) Abandoning any outbound telephone call. An outbound telephone call is "abandoned" under this section if a person answers it and the telemarketer does not connect the call to a sales representative within two (2) seconds of the person's completed greeting.

(v) Initiating any outbound telephone call that delivers a prerecorded message, other than a prerecorded message permitted for compliance with the call abandonment safe harbor in §310.4(b)(4)(iii), unless:

(A) In any such call to induce the purchase of any good or service, the seller has obtained from the recipient of the call an express agreement, in writing, that:

(i) The seller obtained only after a clear and conspicuous disclosure that the purpose of the agreement is to authorize the seller to place prerecorded calls to such person;

(ii) The seller obtained without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service;

(iii) Evidences the willingness of the recipient of the call to receive calls that deliver prerecorded messages by or on behalf of a specific seller; and

(iv) Includes such person's telephone number and signature;[665] and

(B) In any such call to induce the purchase of any good or service, or to induce a charitable contribution from a member of, or previous donor to, a nonprofit charitable organization on whose behalf the call is made, the seller or telemarketer:

(i) Allows the telephone to ring for at least fifteen (15) seconds or four (4) rings before disconnecting an unanswered call; and

_____

valid signature under applicable federal law or state contract law.

[665] For purposes of this Rule, the term "signature" shall include an electronic or digital form of signature, to the extent that such form of signature is recognized as a valid form of signature under applicable federal law or state contract law.

(ii) Within two (2) seconds after the completed greeting of the person called, plays a prerecorded message that promptly provides the disclosures required by §310.4(d) or (e), followed immediately by a disclosure of one or both of the following:

(A) In the case of a call that could be answered in person by a consumer, that the person called can use an automated interactive voice and/or keypress-activated opt-out mechanism to assert a Do Not Call request pursuant to §310.4(b)(1)(iii)(A) at any time during the message. The mechanism must:

(1) Automatically add the number called to the seller's entity-specific Do Not Call list;

(2) Once invoked, immediately disconnect the call; and

(3) Be available for use at any time during the message; and

(B) In the case of a call that could be answered by an answering machine or voicemail service, that the person called can use a toll-free telephone number to assert a Do Not Call request pursuant to §310.4(b)(1)(iii)(A). The number provided must connect directly to an automated interactive voice or keypress-activated opt-out mechanism that:

(1) Automatically adds the number called to the seller's entity-specific Do Not Call list;

(2) Immediately thereafter disconnects the call; and

(3) Is accessible at any time throughout the duration of the telemarketing campaign; and

(iii) Complies with all other requirements of this part and other applicable federal and state laws.

(C) Any call that complies with all applicable requirements of this paragraph (v) shall not be deemed to violate §310.4(b)(1)(iv) of this part.

(D) This paragraph (v) shall not apply to any outbound telephone call that delivers a prerecorded healthcare message made by, or on behalf of, a covered entity or its business associate, as those terms are defined in the HIPAA Privacy Rule, 45 CFR 160.103.

(2) It is an abusive telemarketing act or practice and a violation of this Rule for any person to sell, rent, lease, purchase, or use any list established to comply with §310.4(b)(1)(iii)(A), or

**Federal Trade Commission** §310.4

maintained by the Commission pursuant to §310.4(b)(1)(iii)(B), for any purpose except compliance with the provisions of this Rule or otherwise to prevent telephone calls to telephone numbers on such lists.

(3) A seller or telemarketer will not be liable for violating §310.4(b)(1)(ii) and (iii) if it can demonstrate that, as part of the seller's or telemarketer's routine business practice:

(i) It has established and implemented written procedures to comply with §310.4(b)(1)(ii) and (iii);

(ii) It has trained its personnel, and any entity assisting in its compliance, in the procedures established pursuant to §310.4(b)(3)(i);

(iii) The seller, or a telemarketer or another person acting on behalf of the seller or charitable organization, has maintained and recorded a list of telephone numbers the seller or charitable organization may not contact, in compliance with §310.4(b)(1)(iii)(A);

(iv) The seller or a telemarketer uses a process to prevent telemarketing to any telephone number on any list established pursuant to §310.4(b)(3)(iii) or 310.4(b)(1)(iii)(B), employing a version of the "do-not-call" registry obtained from the Commission no more than thirty-one (31) days prior to the date any call is made, and maintains records documenting this process;

(v) The seller or a telemarketer or another person acting on behalf of the seller or charitable organization, monitors and enforces compliance with the procedures established pursuant to §310.4(b)(3)(i); and

(vi) Any subsequent call otherwise violating paragraph (b)(1)(ii) or (iii) of this section is the result of error and not of failure to obtain any information necessary to comply with a request pursuant to paragraph (b)(1)(iii)(A) of this section not to receive further calls by or on behalf of a seller or charitable organization.

(4) A seller or telemarketer will not be liable for violating §310.4(b)(1)(iv) if:

(i) The seller or telemarketer employs technology that ensures abandonment of no more than three (3) percent of all calls answered by a person, measured over the duration of a single calling campaign, if less than 30 days, or separately over each successive 30-

day period or portion thereof that the campaign continues.

(ii) The seller or telemarketer, for each telemarketing call placed, allows the telephone to ring for at least fifteen (15) seconds or four (4) rings before disconnecting an unanswered call;

(iii) Whenever a sales representative is not available to speak with the person answering the call within two (2) seconds after the person's completed greeting, the seller or telemarketer promptly plays a recorded message that states the name and telephone number of the seller on whose behalf the call was placed[666]; and

(iv) The seller or telemarketer, in accordance with §310.5(b)-(d), retains records establishing compliance with §310.4(b)(4)(i)-(iii).

(c) *Calling time restrictions.* Without the prior consent of a person, it is an abusive telemarketing act or practice and a violation of this Rule for a telemarketer to engage in outbound telephone calls to a person's residence at any time other than between 8:00 a.m. and 9:00 p.m. local time at the called person's location.

(d) *Required oral disclosures in the sale of goods or services.* It is an abusive telemarketing act or practice and a violation of this Rule for a telemarketer in an outbound telephone call or internal or external upsell to induce the purchase of goods or services to fail to disclose truthfully, promptly, and in a clear and conspicuous manner to the person receiving the call, the following information:

(1) The identity of the seller;

(2) That the purpose of the call is to sell goods or services;

(3) The nature of the goods or services; and

(4) That no purchase or payment is necessary to be able to win a prize or participate in a prize promotion if a prize promotion is offered and that any purchase or payment will not increase the person's chances of winning. This disclosure must be made before or in conjunction with the description of the prize to the person called. If requested

---

[666] This provision does not affect any seller's or telemarketer's obligation to comply with relevant state and federal laws, including but not limited to the TCPA, 47 U.S.C. 227, and 47 CFR part 64.1200.

by that person, the telemarketer must disclose the no-purchase/no-payment entry method for the prize promotion; provided, however, that, in any internal upsell for the sale of goods or services, the seller or telemarketer must provide the disclosures listed in this section only to the extent that the information in the upsell differs from the disclosures provided in the initial telemarketing transaction.

(e) *Required oral disclosures in charitable solicitations.* It is an abusive telemarketing act or practice and a violation of this Rule for a telemarketer, in an outbound telephone call to induce a charitable contribution, to fail to disclose truthfully, promptly, and in a clear and conspicuous manner to the person receiving the call, the following information:

(1) The identity of the charitable organization on behalf of which the request is being made; and

(2) That the purpose of the call is to solicit a charitable contribution.

[75 FR 48516, Aug. 10, 2010, as amended at 76 FR 58716, Sept. 22, 2011; 80 FR 77559, Dec. 14, 2015]

### § 310.5  Recordkeeping requirements.

(a) Any seller or telemarketer shall keep, for a period of 24 months from the date the record is produced, the following records relating to its telemarketing activities:

(1) All substantially different advertising, brochures, telemarketing scripts, and promotional materials;

(2) The name and last known address of each prize recipient and the prize awarded for prizes that are represented, directly or by implication, to have a value of $25.00 or more;

(3) The name and last known address of each customer, the goods or services purchased, the date such goods or services were shipped or provided, and the amount paid by the customer for the goods or services;[667]

(4) The name, any fictitious name used, the last known home address and telephone number, and the job title(s) for all current and former employees directly involved in telephone sales or solicitations; provided, however, that if the seller or telemarketer permits fictitious names to be used by employees, each fictitious name must be traceable to only one specific employee; and

(5) All verifiable authorizations or records of express informed consent or express agreement required to be provided or received under this Rule.

(b) A seller or telemarketer may keep the records required by § 310.5(a) in any form, and in the same manner, format, or place as they keep such records in the ordinary course of business. Failure to keep all records required by § 310.5(a) shall be a violation of this Rule.

(c) The seller and the telemarketer calling on behalf of the seller may, by written agreement, allocate responsibility between themselves for the recordkeeping required by this Section. When a seller and telemarketer have entered into such an agreement, the terms of that agreement shall govern, and the seller or telemarketer, as the case may be, need not keep records that duplicate those of the other. If the agreement is unclear as to who must maintain any required record(s), or if no such agreement exists, the seller shall be responsible for complying with §§ 310.5(a)(1)–(3) and (5); the telemarketer shall be responsible for complying with § 310.5(a)(4).

(d) In the event of any dissolution or termination of the seller's or telemarketer's business, the principal of that seller or telemarketer shall maintain all records as required under this section. In the event of any sale, assignment, or other change in ownership of the seller's or telemarketer's business, the successor business shall maintain all records required under this section.

### § 310.6  Exemptions.

(a) Solicitations to induce charitable contributions via outbound telephone calls are not covered by § 310.4(b)(1)(iii)(B) of this Rule.

(b) The following acts or practices are exempt from this Rule:

---

[667] For offers of consumer credit products subject to the Truth in Lending Act, 15 U.S.C. 1601 *et seq.*, and Regulation Z, 12 CFR 226, compliance with the recordkeeping requirements under the Truth in Lending Act, and Regulation Z, shall constitute compliance with § 310.5(a)(3) of this Rule.

(1) The sale of pay-per-call services subject to the Commission's Rule entitled "Trade Regulation Rule Pursuant to the Telephone Disclosure and Dispute Resolution Act of 1992," 16 CFR part 308, *provided*, however, that this exemption does not apply to the requirements of §§310.4(a)(1), (a)(7), (b), and (c);

(2) The sale of franchises subject to the Commission's Rule entitled "Disclosure Requirements and Prohibitions Concerning Franchising," ("Franchise Rule") 16 CFR part 436, and the sale of business opportunities subject to the Commission's Rule entitled "Disclosure Requirements and Prohibitions Concerning Business Opportunities," ("Business Opportunity Rule") 16 CFR part 437, *provided*, however, that this exemption does not apply to the requirements of §§310.4(a)(1), (a)(7), (b), and (c);

(3) Telephone calls in which the sale of goods or services or charitable solicitation is not completed, and payment or authorization of payment is not required, until after a face-to-face sales or donation presentation by the seller or charitable organization, *provided*, however, that this exemption does not apply to the requirements of §§310.4(a)(1), (a)(7), (b), and (c);

(4) Telephone calls initiated by a customer or donor that are not the result of any solicitation by a seller, charitable organization, or telemarketer, *provided*, however, that this exemption does not apply to any instances of upselling included in such telephone calls;

(5) Telephone calls initiated by a customer or donor in response to an advertisement through any medium, other than direct mail solicitation, *provided*, however, that this exemption does not apply to:

(i) Calls initiated by a customer or donor in response to an advertisement relating to investment opportunities, debt relief services, business opportunities other than business arrangements covered by the Franchise Rule or Business Opportunity Rule, or advertisements involving offers for goods or services described in §310.3(a)(1)(vi) or §310.4(a)(2) through (4);

(ii) The requirements of §310.4(a)(9) or (10); or

(iii) Any instances of upselling included in such telephone calls;

(6) Telephone calls initiated by a customer or donor in response to a direct mail solicitation, including solicitations via the U.S. Postal Service, facsimile transmission, electronic mail, and other similar methods of delivery in which a solicitation is directed to specific address(es) or person(s), that clearly, conspicuously, and truthfully discloses all material information listed in §310.3(a)(1), for any goods or services offered in the direct mail solicitation, and that contains no material misrepresentation regarding any item contained in §310.3(d) for any requested charitable contribution; *provided*, however, that this exemption does not apply to:

(i) Calls initiated by a customer in response to a direct mail solicitation relating to prize promotions, investment opportunities, debt relief services, business opportunities other than business arrangements covered by the Franchise Rule or Business Opportunity Rule, or goods or services described in §310.3(a)(1)(vi) or §310.4(a)(2) through (4);

(ii) The requirements of §310.4(a)(9) or (10); or

(iii) Any instances of upselling included in such telephone calls; and

(7) Telephone calls between a telemarketer and any business to induce the purchase of goods or services or a charitable contribution by the business, except calls to induce the retail sale of nondurable office or cleaning supplies; *provided*, however, that §§310.4(b)(1)(iii)(B) and 310.5 shall not apply to sellers or telemarketers of nondurable office or cleaning supplies.

[75 FR 48516, Aug. 10, 2010, as amended at 80 FR 77559, Dec. 14, 2015]

### §310.7 Actions by states and private persons.

(a) Any attorney general or other officer of a state authorized by the state to bring an action under the Telemarketing and Consumer Fraud and Abuse Prevention Act, and any private person who brings an action under that Act, shall serve written notice of its action on the Commission, if feasible, prior to its initiating an action under this Rule. The notice shall be sent to

the Office of the Director, Bureau of Consumer Protection, Federal Trade Commission, Washington, DC 20580, and shall include a copy of the state's or private person's complaint and any other pleadings to be filed with the court. If prior notice is not feasible, the state or private person shall serve the Commission with the required notice immediately upon instituting its action.

(b) Nothing contained in this Section shall prohibit any attorney general or other authorized state official from proceeding in state court on the basis of an alleged violation of any civil or criminal statute of such state.

### § 310.8  Fee for access to the National Do Not Call Registry.

(a) It is a violation of this Rule for any seller to initiate, or cause any telemarketer to initiate, an outbound telephone call to any person whose telephone number is within a given area code unless such seller, either directly or through another person, first has paid the annual fee, required by § 310.8(c), for access to telephone numbers within that area code that are included in the National Do Not Call Registry maintained by the Commission under § 310.4(b)(1)(iii)(B); provided, however, that such payment is not necessary if the seller initiates, or causes a telemarketer to initiate, calls solely to persons pursuant to §§ 310.4(b)(1)(iii)(B)(i) or (ii), and the seller does not access the National Do Not Call Registry for any other purpose.

(b) It is a violation of this Rule for any telemarketer, on behalf of any seller, to initiate an outbound telephone call to any person whose telephone number is within a given area code unless that seller, either directly or through another person, first has paid the annual fee, required by § 310.8(c), for access to the telephone numbers within that area code that are included in the National Do Not Call Registry; provided, however, that such payment is not necessary if the seller initiates, or causes a telemarketer to initiate, calls solely to persons pursuant to §§ 310.4(b)(1)(iii)(B)(i) or (ii), and the seller does not access the National Do

Not Call Registry for any other purpose.

(c) The annual fee, which must be paid by any person prior to obtaining access to the National Do Not Call Registry, is $66 for each area code of data accessed, up to a maximum of $18,044; *provided,* however, that there shall be no charge to any person for accessing the first five area codes of data, and *provided further,* that there shall be no charge to any person engaging in or causing others to engage in outbound telephone calls to consumers and who is accessing area codes of data in the National Do Not Call Registry if the person is permitted to access, but is not required to access, the National Do Not Call Registry under this Rule, 47 CFR 64.1200, or any other Federal regulation or law. No person may participate in any arrangement to share the cost of accessing the National Do Not Call Registry, including any arrangement with any telemarketer or service provider to divide the costs to access the registry among various clients of that telemarketer or service provider.

(d) Each person who pays, either directly or through another person, the annual fee set forth in paragraph (c) of this section, each person excepted under paragraph (c) from paying the annual fee, and each person excepted from paying an annual fee under § 310.4(b)(1)(iii)(B), will be provided a unique account number that will allow that person to access the registry data for the selected area codes at any time for the twelve month period beginning on the first day of the month in which the person paid the fee (''the annual period''). To obtain access to additional area codes of data during the first six months of the annual period, each person required to pay the fee under paragraph (c) of this section must first pay $66 for each additional area code of data not initially selected. To obtain access to additional area codes of data during the second six months of the annual period, each person required to pay the fee under paragraph (c) of this section must first pay $33 for each additional area code of data not initially selected. The payment of the additional fee will permit the person to access the additional area codes of data for the remainder of the annual period.

**Federal Trade Commission** §311.3

(e) Access to the National Do Not Call Registry is limited to telemarketers, sellers, others engaged in or causing others to engage in telephone calls to consumers, service providers acting on behalf of such persons, and any government agency that has law enforcement authority. Prior to accessing the National Do Not Call Registry, a person must provide the identifying information required by the operator of the registry to collect the fee, and must certify, under penalty of law, that the person is accessing the registry solely to comply with the provisions of this Rule or to otherwise prevent telephone calls to telephone numbers on the registry. If the person is accessing the registry on behalf of sellers, that person also must identify each of the sellers on whose behalf it is accessing the registry, must provide each seller's unique account number for access to the national registry, and must certify, under penalty of law, that the sellers will be using the information gathered from the registry solely to comply with the provisions of this Rule or otherwise to prevent telephone calls to telephone numbers on the registry.

[75 FR 48516, Aug. 10, 2010; 75 FR 51934, Aug. 24, 2010, as amended at 77 FR 51697, Aug. 27, 2012; 78 FR 53643, Aug. 30, 2013; 79 FR 51478, Aug. 29, 2014; 80 FR 77560, Dec. 14, 2016; 81 FR 59845, Aug. 31, 2016; 82 FR 39534, Aug. 21, 2017; 83 FR 46640, Sept. 14, 2018; 84 FR 44687, Aug. 27, 2019; 85 FR 62597, Oct. 5, 2020]

§310.9  **Severability.**

The provisions of this Rule are separate and severable from one another. If any provision is stayed or determined to be invalid, it is the Commission's intention that the remaining provisions shall continue in effect.

# PART 311—TEST PROCEDURES AND LABELING STANDARDS FOR RECYCLED OIL

Sec.
311.1  Definitions.
311.2  Stayed or invalid parts.
311.3  Preemption.
311.4  Testing.
311.5  Labeling.
311.6  Prohibited acts.

AUTHORITY: 42 U.S.C. 6363(d).

SOURCE: 60 FR 55421, Oct. 31, 1995, unless otherwise noted.

§311.1  **Definitions.**

As used in this part:

(a) *Manufacturer* means any person who re-refines or otherwise processes used oil to remove physical or chemical impurities acquired through use or who blends such re-refined or otherwise processed used oil with new oil or additives.

(b) *New oil* means any synthetic oil or oil that has been refined from crude oil and which has not been used and may or may not contain additives. Such term does not include used oil or recycled oil.

(c) *Processed used* oil means re-refined or otherwise processed used oil or blend of oil, consisting of such re-refined or otherwise processed used oil and new oil or additives.

(d) *Recycled oil* means processed used oil that the manufacturer has determined, pursuant to section 311.4 of this part, is substantially equivalent to new oil for use as engine oil.

(e) *Used oil* means any synthetic oil or oil that has been refined from crude oil, which has been used and, as a result of such use, has been contaminated by physical or chemical impurities.

(f) *Re-refined oil* means used oil from which physical and chemical contaminants acquired through use have been removed.

§311.2  **Stayed or invalid parts.**

If any part of this rule is stayed or held invalid, the rest of it will remain in force.

§311.3  **Preemption.**

No law, regulation, or order of any State or political subdivision thereof may apply, or remain applicable, to any container of recycled oil, if such law, regulation, or order requires any container of recycled oil, which container bears a label in accordance with the terms of §311.5 of this part, to bear any label with respect to the comparative characteristics of such recycled oil with new oil that is not identical to that permitted by §311.5 of this part.

Attachment B

Telephone Fraud Prevention Act

Chapter 26.    Telephone Fraud Prevention Act

13 UT ST Ch. 26, Refs & Annos

§ 13–26–1.    Short Title

§ 13–26–2.    Definitions

§ 13–26–3.    Registration and Bond Required

§ 13–26–4.    Exemptions from Registration

§ 13–26–5.    Right of Rescission—Cancellation

§ 13-26-6.    Repealed by Laws 1994, C. 189, § 7, eff. May 2, 1994

§ 13-26-7.    Repealed by Laws 1994, C. 189, § 7, eff. May 2, 1994

§ 13–26–8.    Penalties

§ 13-26-9.    Repealed by Laws 1994, C. 189, § 7, eff. May 2, 1994

§ 13–26–10.    Provisions of Chapter Not Exclusive

§ 13–26–11.    Prohibited Practices

§ 13–26–12.    Consumer Complaints Are Public

West's Utah Code Annotated
Title 13. Commerce and Trade
Chapter 26. Telephone Fraud Prevention Act

U.C.A. 1953 T. 13, Ch. 26, Refs & Annos
Currentness

U.C.A. 1953 T. 13, Ch. 26, Refs & Annos, UT ST T. 13, Ch. 26, Refs & Annos
Current through 2021 First Special Session.

---

**End of Document** © 2021 Thomson Reuters. No claim to original U.S. Government Works.

West's Utah Code Annotated
   Title 13. Commerce and Trade
      Chapter 26. Telephone Fraud Prevention Act (Refs & Annos)

U.C.A. 1953 § 13-26-1

§ 13-26-1. Short title

Currentness

This chapter is known as the "Telephone Fraud Prevention Act."

**Credits**
Laws 1990, c. 154, § 1.

Notes of Decisions (5)

U.C.A. 1953 § 13-26-1, UT ST § 13-26-1
Current through 2021 First Special Session.

**End of Document** © 2021 Thomson Reuters. No claim to original U.S. Government Works.

---

| West's Utah Code Annotated |
| --- |
|    Title 13. Commerce and Trade |
|       Chapter 26. Telephone Fraud Prevention Act (Refs & Annos) |

U.C.A. 1953 § 13-26-2

## § 13-26-2. Definitions

### Currentness

As used in this chapter, unless the context otherwise requires:

(1) "Continuity plan" means a shipment, with the prior express consent of the buyer, at regular intervals of similar special-interest products. A continuity plan is distinguished from a subscription arrangement by no binding commitment period or purchase amount.

(2) "Division" means the Division of Consumer Protection.

(3) "Fictitious personal name" means a name other than an individual's true name. An "individual's true name" is the name taken at birth unless changed by operation of law or by civil action.

(4) "Material statement" or "material fact" means information that a person of ordinary intelligence or prudence would consider important in deciding whether or not to accept an offer extended through a telephone solicitation.

(5) "Premium" means a gift, bonus, prize, award, certificate, or other document by which a prospective purchaser is given a right, chance, or privilege to purchase or receive goods or services with a stated or represented value of $25 or more as an inducement to a prospective purchaser to purchase other goods or services.

(6) "Subscription arrangements," "standing order arrangements," "supplements," and "series arrangements" mean products or services provided, with the prior express request or consent of the buyer, for a specified period of time at a price dependent on the duration of service and to complement an initial purchase.

(7)(a) "Telephone solicitation," "sale," "selling," or "solicitation of sale" means:

   (i) a sale or solicitation of goods or services in which:

      (A)(I) the seller solicits the sale over the telephone;

         (II) the purchaser's agreement to purchase is made over the telephone; and

(III) the purchaser, over the telephone, pays for or agrees to commit to payment for goods or services prior to or upon receipt by the purchaser of the goods or services;

(B) the solicitor, not exempt under Section 13-26-4, induces a prospective purchaser over the telephone, to make and keep an appointment that directly results in the purchase of goods or services by the purchaser that would not have occurred without the telephone solicitation and inducement by the solicitor;

(C) the seller offers or promises a premium to a prospective purchaser if:

(I) the seller induces the prospective purchaser to initiate a telephone contact with the telephone soliciting business; and

(II) the resulting solicitation meets the requirements of Subsection (7)(a); or

(D) the solicitor solicits a charitable donation involving the exchange of any premium, prize, gift, ticket, subscription, or other benefit in connection with any appeal made for a charitable purpose by an organization that is not otherwise exempt under Subsection 13-26-4(2)(b)(iv); or

(ii) a telephone solicitation as defined in Section 13-25a-102.

(b) "Telephone solicitation," "sale," "selling," or "solicitation of sale" does not include a sale or solicitation that occurs solely through an Internet website without the use of a telephone call.

(c) A solicitation of sale or telephone solicitation is considered complete when made, whether or not the person receiving the solicitation agrees to the sale or to make a charitable donation.

(8) "Telephone soliciting business" means a sole proprietorship, partnership, limited liability company, corporation, or other association of individuals engaged in a common effort to conduct telephone solicitations.

(9) "Telephone solicitor" or "solicitor" means a person, partnership, limited liability company, corporation, or other entity that:

(a) makes a telephone solicitation; or

(b) causes a telephone solicitation to be made.

**Credits**

Laws 1990, c. 154, § 2; Laws 1993, c. 37, § 1; Laws 1994, c. 189, § 1; Laws 1995, c. 26, § 1, eff. May 1, 1995; Laws 1997, c. 92, § 2, eff. May 5, 1997; Laws 2004, c. 55, § 7, eff. March 15, 2004; Laws 2005, c. 18, § 13, eff. March 8, 2005; Laws 2012, c. 152, § 4, eff. May 8, 2012.

U.C.A. 1953 § 13-26-2, UT ST § 13-26-2
Current through 2021 First Special Session.

**End of Document**                                   © 2021 Thomson Reuters. No claim to original U.S. Government Works.

U.C.A. 1953 § 13-26-3

## § 13-26-3. Registration and bond required

### Currentness

(1)(a) Unless exempt under Section 13-26-4, each telephone soliciting business shall register annually with the division before engaging in telephone solicitations if:

(i) the telephone soliciting business engages in telephone solicitations that:

(A) originate in Utah; or

(B) are received in Utah; or

(ii) the telephone soliciting business conducts any business operations in Utah.

(b) The registration form shall designate an agent residing in this state who is authorized by the telephone soliciting business to receive service of process in any action brought by this state or a resident of this state.

(c) If a telephone soliciting business fails to designate an agent to receive service or fails to appoint a successor to the agent:

(i) the business' application for an initial or renewal registration shall be denied; and

(ii) any current registration shall be suspended until an agent is designated.

(d)(i) For purposes of this section only, the registered agent of a telephone soliciting business shall provide the division proof of residency in the state.

(ii) Proof of residency under Subsection (1)(d)(i) may be provided by a valid Utah driver license, valid governmental photo identification issued to a resident of the state, or other verifiable identification indicating residency in the state.

(2) The division may impose an annual registration fee set pursuant to Section 63J-1-504 that may include the cost of the criminal background check described in Subsection (4).

(3)(a) Each telephone soliciting business engaging in telephone solicitation or sales in this state shall obtain and maintain the following security:

  (i) a performance bond issued by a surety authorized to transact surety business in this state;

  (ii) an irrevocable letter of credit issued by a financial institution authorized to do business in this state; or

  (iii) a certificate of deposit held in this state in a depository institution regulated by the Department of Financial Institutions.

(b) The bond, letter of credit, or certificate of deposit shall be payable to the division for the benefit of any consumer who incurs damages as the result of any telephone solicitation or sales violation of this chapter.

(c) The division may recover from the bond, letter of credit, or certificate of deposit investigative costs, attorney fees, and other costs of collecting and distributing funds under this section and the costs of promoting consumer education, but only if the consumer has first recovered full damages.

(d) A telephone soliciting business shall keep a bond, certificate of deposit, or letter of credit in force for one year after it notifies the division in writing that it has ceased all activities regulated by this chapter.

(e) The amount to be posted in the form of a bond, irrevocable letter of credit, or certificate of deposit shall be:

  (i) $25,000 if:

    (A) neither the telephone soliciting business nor any affiliated person has violated this chapter within three years preceding the date of the application; and

    (B) the telephone soliciting business has fewer than 10 employees;

  (ii) $50,000 if:

    (A) neither the telephone soliciting business nor any affiliated person has violated this chapter within three years preceding the date of the application; and

    (B) the telephone soliciting business has 10 or more employees; or

  (iii) $75,000 if the telephone soliciting business or any affiliated person has violated this chapter within three years preceding the date of the application.

(f) For purposes of Subsection (3)(e) an "affiliated person" means a contractor, director, employee, officer, owner, or partner of the telephone soliciting business.

(4)(a) As used in this Subsection (4), "participant" means an individual with a controlling interest in or an owner, officer, director, member, principal, trustee, general partner, limited partner, manager, sole proprietor, or key employee of a person seeking to register or renew a registration as a telephone soliciting business.

(b) As part of the process to register or renew a registration as a telephone soliciting business, a participant:

(i) may not, within the previous 10 years, have been convicted of a felony;

(ii) may not, within the previous 10 years, have been convicted of a misdemeanor involving moral turpitude, including theft, fraud, or dishonesty; and

(iii) shall submit to the division:

(A) the participant's fingerprints, in a form acceptable to the division, for purposes of a criminal background check; and

(B) consent to a criminal background check by the Bureau of Criminal Identification created in Section 53-10-201.

(5) The division may establish by rule the registration requirements for telephone soliciting businesses under the terms of Title 63G, Chapter 3, Utah Administrative Rulemaking Act. An administrative proceeding conducted by the division under this chapter shall comply with the requirements of Title 63G, Chapter 4, Administrative Procedures Act.

(6) If information in an application for registration or for renewal of registration as a telephone soliciting business materially changes or becomes incorrect or incomplete, the applicant shall, within 30 days after the information changes or becomes incorrect or incomplete, correct the application or submit the correct information to the division in a manner that the division establishes by rule.

(7) The division director may deny or revoke a registration under this section for any violation of this chapter.

**Credits**

Laws 1990, c. 154, § 3; Laws 1993, c. 37, § 2; Laws 1994, c. 189, § 2; Laws 1994, c. 313, § 11; Laws 1999, c. 124, § 2, eff. March 17, 1999; Laws 2002, c. 122, § 2, eff. May 6, 2002; Laws 2005, c. 18, § 14, eff. March 8, 2005; Laws 2008, c. 382, § 145, eff. May 5, 2008; Laws 2009, c. 183, § 21, eff. May 12, 2009; Laws 2013, c. 124, § 8, eff. May 14, 2013.

U.C.A. 1953 § 13-26-3, UT ST § 13-26-3
Current through 2021 First Special Session.

**End of Document**

© 2021 Thomson Reuters. No claim to original U.S. Government Works.

West's Utah Code Annotated
Title 13. Commerce and Trade
Chapter 26. Telephone Fraud Prevention Act (Refs & Annos)

U.C.A. 1953 § 13-26-4

# § 13-26-4. Exemptions from registration

Currentness

(1) In any enforcement action initiated by the division, the person claiming an exemption has the burden of proving that the person is entitled to the exemption.

(2) The following are exempt from the requirements of this chapter except for the requirements of Sections 13-26-8 and 13-26-11:

(a) a broker, agent, dealer, or sales professional licensed under the licensure laws of this state, when soliciting sales within the scope of his license;

(b) the solicitation of sales by:

(i) a public utility that is regulated under Title 54, Public Utilities, or by an affiliate of the utility;

(ii) a newspaper of general circulation;

(iii) a solicitation of sales made by a broadcaster licensed by any state or federal authority;

(iv) a nonprofit organization if no part of the net earnings from the sale inures to the benefit of any member, officer, trustee, or serving board member of the organization, or individual, or family member of an individual, holding a position of authority or trust in the organization; and

(v) a person who periodically publishes and delivers a catalog of the solicitor's merchandise to prospective purchasers, if the catalog:

(A) contains the price and a written description or illustration of each item offered for sale;

(B) includes the business address of the solicitor;

(C) includes at least 24 pages of written material and illustrations;

(D) is distributed in more than one state; and

(E) has an annual circulation by mailing of not less than 250,000;

(c) any publicly-traded corporation registered with the Securities and Exchange Commission, or any subsidiary of the corporation;

(d) the solicitation of any depository institution as defined in Section 7-1-103, a subsidiary of a depository institution, personal property broker, securities broker, investment adviser, consumer finance lender, or insurer subject to regulation by an official agency of this state or the United States;

(e) the solicitation by a person soliciting only the sale of telephone services to be provided by the person or the person's employer;

(f) the solicitation of a person relating to a transaction regulated by the Commodities Futures Trading Commission, if:

(i) the person is registered with or temporarily licensed by the commission to conduct that activity under the Commodity Exchange Act; and

(ii) the registration or license has not expired or been suspended or revoked;

(g) the solicitation of a contract for the maintenance or repair of goods previously purchased from the person:

(i) who is making the solicitation; or

(ii) on whose behalf the solicitation is made;

(h) the solicitation of previous customers of the business on whose behalf the call is made if the person making the call:

(i) does not offer any premium in conjunction with a sale or offer;

(ii) is not selling an investment or an opportunity for an investment that is not registered with any state or federal authority; and

(iii) is not regularly engaged in telephone sales;

(i) the solicitation of a sale that is an isolated transaction and not done in the course of a pattern of repeated transactions of a like nature;

(j) the solicitation of a person by a retail business establishment that has been in operation for at least five years in Utah under the same name as that used in connection with telemarketing if both of the following occur on a continuing basis:

(i) products are displayed and offered for sale at the place of business, or services are offered for sale and provided at the place of business; and

(ii) a majority of the seller's business involves the buyer obtaining the products or services at the seller's place of business;

(k) a person primarily soliciting the sale of a magazine or periodical sold by the publisher or the publisher's agent through a written agreement, or printed or recorded material through a contractual plan, such as a book or record club, continuity plan, subscription, standing order arrangement, or supplement or series arrangement if:

(i) the seller provides the consumer with a form that the consumer may use to instruct the seller not to ship the offered merchandise, and the arrangement is regulated by the Federal Trade Commission trade regulation concerning use of negative option plans by sellers in commerce; or

(ii)(A) the seller periodically ships merchandise to a consumer who has consented in advance to receive the merchandise on a periodic basis; and

(B) the consumer retains the right to cancel at any time and receive a full refund for the unused portion;

(l) a telephone marketing service company that provides telemarketing sales services under contract to sellers if:

(i) it has been doing business regularly with customers in Utah for at least five years under the same business name and with its principal office in the same location;

(ii) at least 75% of its contracts are performed on behalf of persons exempted from registration under this chapter; and

(iii) neither the company nor its principals have been enjoined from doing business or subjected to criminal actions for their business activities in this or any other state;

(m) a credit services organization that holds a current registration with the division under Chapter 21, Credit Services Organizations Act, if the credit services organization's telephone solicitations are limited to the solicitation of services regulated under Chapter 21, Credit Services Organizations Act; and

(n) a provider that holds a current registration with the division under Chapter 42, Uniform Debt-Management Services Act, if the provider's telephone solicitations are limited to the solicitation of services regulated under Chapter 21, Credit Services Organizations Act.

**Credits**

Laws 1990, c. 154, § 4; Laws 1991, c. 60, § 1; Laws 1993, c. 37, § 3; Laws 1994, c. 189, § 3; Laws 1995, c. 26, § 2, eff. May 1, 1995; Laws 1996, c. 170, § 2, eff. July 1, 1996; Laws 2014, c. 189, § 54, eff. May 13, 2014; Laws 2017, c. 98, § 8, eff. May 9, 2017.

U.C.A. 1953 § 13-26-4, UT ST § 13-26-4
Current through 2021 First Special Session.

**End of Document**                                    © 2021 Thomson Reuters. No claim to original U.S. Government Works.

West's Utah Code Annotated
  Title 13. Commerce and Trade
    Chapter 26. Telephone Fraud Prevention Act (Refs & Annos)

U.C.A. 1953 § 13-26-5

§ 13-26-5. Right of rescission--Cancellation

Currentness

(1)(a) Except as provided in Subsections (1)(b) and (c), in addition to any right to otherwise revoke an offer, a person making a purchase from a telephone soliciting business required to be registered under this chapter may cancel the sale up to midnight of the third business day after the receipt of the merchandise or premium, whichever is later, provided the solicitor advises the purchaser of his cancellation rights under this chapter at the time any solicitation is made.

(b) If the solicitor required to be registered under this chapter fails to orally advise a purchaser of the right to cancel under this section at the time of any solicitation, the purchaser's right to cancel shall be extended to 90 days.

(c) If the solicitor required to be registered under this chapter fails to orally advise a purchaser of his true name, telephone number, and complete street address at the time of any solicitation, the purchaser may cancel the sale at any time.

(2) Sales shall be cancelled by mailing a notice of cancellation to the telephone solicitor's correct street address, postage prepaid. If the telephone solicitor provided no correct street address, cancellation can be accomplished by sending a notice of cancellation to the division's offices, postage prepaid.

(3)(a) If a cancellation involves durable goods, as defined by rule, those goods shall be returned to the seller.

(b) If expendable goods are involved, the purchaser shall return any unused portion of those goods.

(c) A reasonable attempt shall be made to return goods to the solicitor's correct street address within seven days of exercising the right to cancel, providing the solicitor has provided the purchaser with the address. If the solicitor has failed to give a correct address, no return is required to qualify for a full refund of the purchase price.

(d) If the purchaser has used any portion of the services or goods purchased, the solicitor or telephone soliciting business shall receive a reasonable allowance for value given. This allowance may be deducted from any refund due the purchaser.

(e) A solicitor shall be jointly and severally liable with the telephone soliciting business for any refund amount due following the cancellation of a sale made by the solicitor.

(4) For the purposes of this section, "business day" does not include Sunday or a federal or state holiday.

**Credits**
Laws 1990, c. 154, § 5; Laws 1994, c. 189, § 4.

U.C.A. 1953 § 13-26-5, UT ST § 13-26-5
Current through 2021 First Special Session.

**End of Document**                    © 2021 Thomson Reuters. No claim to original U.S. Government Works.

Case 2:19-cv-00733-DAK-DAOM Document 365 Filed 02/25/22 PageID.14287 Page 57 of 681

---

West's Utah Code Annotated
　　Title 13. Commerce and Trade
　　　Chapter 26. Telephone Fraud Prevention Act (Refs & Annos)

U.C.A. 1953 § 13-26-6

§§ 13-26-6, 13-26-7. Repealed by Laws 1994, c. 189, § 7, eff. May 2, 1994

Currentness

U.C.A. 1953 § 13-26-6, UT ST § 13-26-6
Current through 2021 First Special Session.

---

**End of Document**　　　　　　　　　　　　　　© 2021 Thomson Reuters. No claim to original U.S. Government Works.

West's Utah Code Annotated
  Title 13. Commerce and Trade
    Chapter 26. Telephone Fraud Prevention Act (Refs & Annos)

U.C.A. 1953 § 13-26-7

§§ 13-26-6, 13-26-7. Repealed by Laws 1994, c. 189, § 7, eff. May 2, 1994

Currentness

U.C.A. 1953 § 13-26-7, UT ST § 13-26-7
Current through 2021 First Special Session.

---

**End of Document** © 2021 Thomson Reuters. No claim to original U.S. Government Works.

West's Utah Code Annotated
  Title 13. Commerce and Trade
    Chapter 26. Telephone Fraud Prevention Act (Refs & Annos)

U.C.A. 1953 § 13-26-8

§ 13-26-8. Penalties

Currentness

(1)(a) Any telephone soliciting business or any person associated with a telephone soliciting business, including solicitors, salespersons, agents, representatives of a solicitor, or independent contractor, who violates this chapter as a first offense is guilty of a class B misdemeanor.

(b) In the case of a second offense, the person is guilty of a class A misdemeanor.

(c) In the case of three or more offenses, the person is guilty of a third degree felony.

(d)(i) In addition to other penalties under this Subsection (1), the division director may issue a cease and desist order and impose an administrative fine of up to $2,500 for each violation of this chapter.

(ii) For purposes of Subsection (1)(d)(i), each telephone solicitation made in violation of this chapter is a separate violation.

(iii) All money received through administrative fines imposed under this section shall be deposited in the Consumer Protection Education and Training Fund created by Section 13-2-8.

(2) Any telephone soliciting business or any person associated with a telephone soliciting business, including solicitors, salespersons, agents, representatives of a solicitor, or independent contractors, who violates any provision of this chapter shall be subject to a civil penalty in a court of competent jurisdiction not exceeding $2,500 for each unlawful transaction.

**Credits**

Laws 1990, c. 154, § 8; Laws 1993, c. 37, § 4; Laws 1994, c. 189, § 5; Laws 1995, c. 26, § 3, eff. May 1, 1995; Laws 2005, c. 18, § 15, eff. March 8, 2005; Laws 2013, c. 124, § 9, eff. May 14, 2013.

U.C.A. 1953 § 13-26-8, UT ST § 13-26-8
Current through 2021 First Special Session.

**End of Document**

© 2021 Thomson Reuters. No claim to original U.S. Government Works.

Case 2:19-cv-00733-DAK-DAOM Document 868  Filed 02/25/22  PageID.14237  Page 60 of 84

§ 13-26-9. Repealed by Laws 1994, c. 189, § 7, eff. May 2, 1994, UT ST § 13-26-9

West's Utah Code Annotated
  Title 13. Commerce and Trade
    Chapter 26. Telephone Fraud Prevention Act (Refs & Annos)

U.C.A. 1953 § 13-26-9

§ 13-26-9. Repealed by Laws 1994, c. 189, § 7, eff. May 2, 1994

Currentness

U.C.A. 1953 § 13-26-9, UT ST § 13-26-9
Current through 2021 First Special Session.

**End of Document**                    © 2021 Thomson Reuters. No claim to original U.S. Government Works.

West's Utah Code Annotated
    Title 13. Commerce and Trade
        Chapter 26. Telephone Fraud Prevention Act (Refs & Annos)

U.C.A. 1953 § 13-26-10

# § 13-26-10. Provisions of chapter not exclusive

### Currentness

The remedies, duties, prohibitions, and penalties of this chapter are not exclusive and are in addition to all other causes of action, remedies, and penalties provided by law.

**Credits**
Laws 1991, c. 184, § 2.

Notes of Decisions (5)

U.C.A. 1953 § 13-26-10, UT ST § 13-26-10
Current through 2021 First Special Session.

**End of Document**                                              © 2021 Thomson Reuters. No claim to original U.S. Government Works.

West's Utah Code Annotated
   Title 13. Commerce and Trade
      Chapter 26. Telephone Fraud Prevention Act (Refs & Annos)

U.C.A. 1953 § 13-26-11

## § 13-26-11. Prohibited practices

Currentness

(1) It is unlawful for any solicitor:

   (a) to solicit a prospective purchaser on behalf of a telephone soliciting business that is not registered with the division or exempt from registration under this chapter;

   (b) to use a fictitious personal name in connection with a telephone solicitation;

   (c) to make or cause to be made any untrue material statement, or fail to disclose a material fact necessary to make any statement made not misleading, whether in connection with a telephone solicitation or a filing with the division;

   (d) to make or authorize the making of any misrepresentation about its compliance with this chapter to any prospective or actual purchaser;

   (e) to fail to refund within 30 days any amount due a purchaser who exercises the right to cancel under Section 13-26-5; or

   (f) to fail to orally advise a purchaser of the purchaser's right to cancel under Section 13-26-5 unless the solicitor is exempt under Section 13-26-4.

(2) It is unlawful for any telephone soliciting business:

   (a) to cause or permit any solicitor to violate any provision of this chapter; or

   (b) to use inmates in telephone soliciting operations where inmates have access to personal data about an individual sufficient to physically locate or contact that individual, such as names, addresses, telephone numbers, Social Security numbers, credit card information, or physical descriptions.

**Credits**

Laws 1994, c. 189, § 6; Laws 1998, c. 77, § 3, eff. May 4, 1998; Laws 2005, c. 18, § 16, eff. March 5, 2005; Laws 2013, c. 124, § 10, eff. May 14, 2013.

U.C.A. 1953 § 13-26-11, UT ST § 13-26-11
Current through 2021 First Special Session.

**End of Document**                              © 2021 Thomson Reuters. No claim to original U.S. Government Works.

West's Utah Code Annotated
  Title 13. Commerce and Trade
    Chapter 26. Telephone Fraud Prevention Act (Refs & Annos)

U.C.A. 1953 § 13-26-12

§ 13-26-12. Consumer complaints are public

Currentness

(1) As used in this section, "consumer complaint" means a complaint that:

  (a) is filed with the division by a consumer or business;

  (b) alleges facts relating to conduct that the division regulates under this chapter; and

  (c)(i) alleges a loss to the consumer or business of $3,500 or more; or

    (ii) is one of at least 50 other complaints against the same person filed by other consumers or businesses during the four years immediately preceding the filing of the complaint.

(2) For purposes of determining the number of complaints against the same person under Subsection (1)(c)(ii), the division may consider complaints filed against multiple corporations, limited liability companies, partnerships, or other business entities under common ownership to be complaints against the same person.

(3) Notwithstanding Subsection 13-11-7(2) and subject to Subsections (4) and (5), a consumer complaint:

  (a) is a public record; and

  (b) may not be classified as a private, controlled, or protected record under Title 63G, Chapter 2, Government Records Access and Management Act.

(4) Subsection (3) does not apply to a consumer complaint:

  (a)(i) if the division determines through an administrative proceeding that the consumer complaint is nonmeritorious; and

    (ii) beginning when the nonmeritorious determination is made; or

(b) that has been on file with the division for more than four years.


(5) Before making a consumer complaint that is subject to Subsection (3) or a response described in Subsection (6) available to the public, the division:


(a) shall redact from the consumer complaint or response any information that would disclose the address, Social Security number, bank account information, email address, or telephone number of the consumer or business; and


(b) may redact the name of the consumer or business and any other information that could, in the division's judgment, disclose the identity of the consumer or business filing the consumer complaint.


(6) A person's initial, written response to a consumer complaint that is subject to Subsection (2) is a public record.


**Credits**

Laws 2015, c. 335, § 2, eff. May 12, 2015.


U.C.A. 1953 § 13-26-12, UT ST § 13-26-12
Current through 2021 First Special Session.

---

**End of Document**                                © 2021 Thomson Reuters. No claim to original U.S. Government Works.

Attachment C

Business Opportunity Disclosure Act

Chapter 15.    Business Opportunity Disclosure Act
§  13–15–1.    Short Title
§  13–15–2.    Definitions
§  13–15–3.    Administration  and  Enforcement—Powers—Legal  Counsel—Fees—Consumer
Complaints
§  13–15–4.    Information to be Filed by Seller Annually—Representations—Fees
§  13–15–4.5.    Notice of Exemption Filing
§  13–15–5.    Disclosure Statement Furnished to Buyer—Contents
§  13–15–6.    Failure to File Disclosures—Relief Where Seller Fails to Comply with Chapter—
Relief Where Division Granted Judgment or Injunction—Administrative Fines
§  13–15–7.    Civil Penalty for Violation of Cease and Desist Order

> West's Utah Code Annotated
> > Title 13. Commerce and Trade
> > > Chapter 15. Business Opportunity Disclosure Act

U.C.A. 1953 § 13-15-1

# § 13-15-1. Short title

### Currentness

This act shall be known and may be cited as the "Business Opportunity Disclosure Act."

**Credits**

Laws 1981, c. 69, § 1.

U.C.A. 1953 § 13-15-1, UT ST § 13-15-1
Current through 2021 First Special Session.

**End of Document**
© 2021 Thomson Reuters. No claim to original U.S. Government Works.

> West's Utah Code Annotated
>   Title 13. Commerce and Trade
>     Chapter 15. Business Opportunity Disclosure Act

U.C.A. 1953 § 13-15-2

# § 13-15-2. Definitions

Currentness

As used in this chapter:

(1)(a) "Assisted marketing plan" means the sale or lease of any products, equipment, supplies, or services that are sold to the purchaser upon payment of an initial required consideration of $500 or more for the purpose of enabling the purchaser to start a business, and in which the seller represents:

(i) that the seller will provide locations or assist the purchaser in finding locations for the use or operation of vending machines, racks, display cases, or other similar devices, or currency operated amusement machines or devices, on premises neither owned nor leased by the purchaser or seller;

(ii) that the seller will purchase any or all products made, produced, fabricated, grown, or modified by the purchaser, using in whole or in part the supplies, services, or chattels sold to the purchaser;

(iii) that the seller will provide the purchaser with a guarantee that the purchaser will receive income from the assisted marketing plan that exceeds the price paid for the assisted marketing plan, or repurchase any of the products, equipment, supplies, or chattels supplied by the seller if the purchaser is dissatisfied with the assisted marketing plan; or

(iv) that upon payment by the purchaser of a fee or sum of money, which exceeds $500 to the seller, the seller will provide a sales program or marketing program that will enable the purchaser to derive income from the assisted marketing plan that exceeds the price paid for the marketing plan.

(b) "Assisted marketing plan" does not include:

(i) the sale of an ongoing business when the owner of that business sells and intends to sell only that one assisted marketing plan;

(ii) not-for-profit sale of sales demonstration equipment, materials, or samples for a total price of $500 or less; or

(iii) the sale of a package franchise or a product franchise defined by and in compliance with Federal Trade Commission rules governing franchise and business opportunity ventures.

(c) As used in Subsection (1)(a)(iii) "guarantee" means a written agreement, signed by the purchaser and seller, disclosing the complete details and any limitations or exceptions of the agreement.

(2) "Business opportunity" means an assisted marketing plan subject to this chapter.

(3) "Division" means the Division of Consumer Protection of the Department of Commerce.

(4)(a) "Initial required consideration" means the total amount a purchaser is obligated to pay under the terms of the assisted marketing plan, either prior to or at the time of delivery of the products, equipment, supplies, or services, or within six months of the commencement of operation of the assisted marketing plan by the purchaser. If payment is over a period of time, "initial required consideration" means the sum of the down payment and the total monthly payments.

(b) "Initial required consideration" does not mean the not-for-profit sale of sales demonstration equipment, materials, or supplies for a total price of less than $500.

(5) "Person" means any natural person, corporation, partnership, organization, association, trust, or any other legal entity.

(6) "Purchaser" means a person who becomes obligated to pay for an assisted marketing plan.

(7) "Registered trademark" or "service mark" means a trademark, trade name, or service mark registered with the United States Patent and Trademark Office, or Utah, or the state of incorporation if a corporation.

(8) "Seller" means a person who sells or offers to sell an assisted marketing plan.

**Credits**
Laws 1981, c. 69, § 1; Laws 1983, c. 58, § 10; Laws 1986, c. 130, § 1; Laws 1989, c. 225, § 7; Laws 1995, c. 85, § 1, eff. May 1, 1995; Laws 2001, c. 196, § 2, eff. April 30, 2001; Laws 2012, c. 152, § 3, eff. May 8, 2012.

Notes of Decisions (4)

U.C.A. 1953 § 13-15-2, UT ST § 13-15-2
Current through 2021 First Special Session.

WESTLAW  © 2021 Thomson Reuters. No claim to original U.S. Government Works.                                    2

West's Utah Code Annotated
   Title 13. Commerce and Trade
      Chapter 15. Business Opportunity Disclosure Act

U.C.A. 1953 § 13-15-3

## § 13-15-3. Administration and enforcement--
## Powers--Legal counsel--Fees--Consumer complaints

Currentness

(1) The division shall administer and enforce this chapter. In the exercise of its responsibilities, the division shall enjoy the powers, and be subject to the constraints, set forth in Title 13, Chapter 2, Division of Consumer Protection.

(2) The attorney general, upon request, shall give legal advice to, and act as counsel for, the division in the exercise of its responsibilities under this chapter.

(3) All fees collected under this chapter shall be deposited in the Commerce Service Account created by Section 13-1-2.

(4)(a) As used in this Subsection (4), "consumer complaint" means a complaint that:

   (i) is filed with the division by a consumer or business;

   (ii) alleges facts relating to conduct that the division regulates under this chapter; and

   (iii)(A) alleges a loss to the consumer or business of $3,500 or more; or

      (B) is one of at least 50 other complaints against the same person filed by other consumers or businesses during the four years immediately preceding the filing of the complaint.

(b) For purposes of determining the number of complaints against the same person under Subsection (4)(a)(iii)(B), the division may consider complaints filed against multiple corporations, limited liability companies, partnerships, or other business entities under common ownership to be complaints against the same person.

(c) Notwithstanding Subsection 13-11-7(2) and subject to Subsections (4)(d) and (e), a consumer complaint:

   (i) is a public record; and

(ii) may not be classified as a private, controlled, or protected record under Title 63G, Chapter 2, Government Records Access and Management Act.


(d) Subsection (4)(c) does not apply to a consumer complaint:


(i)(A) if the division determines through an administrative proceeding that the consumer complaint is nonmeritorious; and


(B) beginning when the nonmeritorious determination is made; or


(ii) that has been on file with the division for more than four years.


(e) Before making a consumer complaint that is subject to Subsection (4)(c) or a response described in Subsection (4)(f) available to the public, the division:


(i) shall redact from the consumer complaint or response any information that would disclose the address, Social Security number, bank account information, email address, or telephone number of the consumer or business; and


(ii) may redact the name of the consumer or business and any other information that could, in the division's judgment, disclose the identity of the consumer or business filing the consumer complaint.


(f) A person's initial, written response to a consumer complaint that is subject to Subsection (4)(c) is a public record.


**Credits**

Laws 1981, c. 69, § 1; Laws 1983, c. 58, § 11; Laws 1995, c. 85, § 2, eff. May 1, 1995; Laws 2010, c. 278, § 12, eff. May 11, 2010; Laws 2015, c. 335, § 1, eff. May 12, 2015.


U.C.A. 1953 § 13-15-3, UT ST § 13-15-3
Current through 2021 First Special Session.

---

**End of Document** © 2021 Thomson Reuters. No claim to original U.S. Government Works.

West's Utah Code Annotated
    Title 13. Commerce and Trade
      Chapter 15. Business Opportunity Disclosure Act

U.C.A. 1953 § 13-15-4

## § 13-15-4. Information to be filed by seller annually--Representations--Fees

Currentness

(1) A seller of an assisted marketing plan shall annually file the following information with the division:

(a) the name, address, and principal place of business of the seller, and the name, address, and principal place of business of the parent or holding company of the seller, if any, who is responsible for statements made by the seller;

(b) the trademarks, trade names, service marks, or advertising or other commercial symbols that identify the products, equipment, supplies, or services to be offered, sold, or distributed by the prospective purchaser;

(c) an individual detailed statement covering the past five years of the business experience of each of the seller's current directors and executive officers and an individual statement covering the same period for the seller and the seller's parent company, if any, including the length of time each:

(i) has conducted a business of the type advertised or solicited for operation by a prospective purchaser;

(ii) has offered or sold the assisted marketing plan; and

(iii) has offered for sale or sold assisted marketing plans in other lines of business, together with a description of the other lines of business;

(d)(i) a statement of the total amount that shall be paid by the purchaser to obtain or commence the business opportunity such as initial fees, deposits, down payments, prepaid rent, and equipment and inventory purchases; and

(ii) if all or part of the fees or deposits described in Subsection (1)(d)(i) are returnable, the conditions under which the fees or deposits are returnable;

(e) a complete statement of the actual services the seller will perform for the purchaser;

(f) a complete statement of the oral, written, or visual representations that will be made to prospective purchasers about specific levels of potential sales, income, gross and net profits, or any other representations that suggest a specific level;

(g) a complete description of the type and length of any training promised to prospective purchasers;

(h)(i) a complete description of any services promised to be performed by the seller in connection with the placement of the equipment, products, or supplies at any location from which they will be sold or used; and

(ii) a complete description of the services described in Subsection (1)(h)(i) together with any agreements that will be made by the seller with the owner or manager of the location where the purchaser's equipment, products, or supplies will be placed;

(i) a statement that discloses any person identified in Subsection (1)(a) who:

(i) has been convicted of a felony or misdemeanor or pleaded nolo contendere to a felony or misdemeanor charge if the felony or misdemeanor involved fraud, embezzlement, fraudulent conversion, or misappropriation of property;

(ii) has been held liable or consented to the entry of a stipulated judgment in a civil action based upon fraud, embezzlement, fraudulent conversion, misappropriation of property, or the use of untrue or misleading representations in the sale or attempted sale of any real or personal property, or upon the use of any unfair, unlawful or deceptive business practice; or

(iii) is subject to an injunction or restrictive order relating to business activity as the result of an action brought by a public agency;

(j) a financial statement that is less than 13 months old of the seller signed by one of the seller's officers, directors, trustees, or general or limited partners, under a declaration that certifies that to the signatory's knowledge and belief the information in the financial statement is true and accurate;

(k) a copy of the entire marketing plan contract;

(l) the number of marketing plans sold to date, and the number of plans under negotiation;

(m) geographical information, including the states in which the seller's assisted marketing plans have been sold, and the number of plans in each state;

(n) the total number of marketing plans that were cancelled by the seller in the past 12 months; and

(o) the number of marketing plans that were voluntarily terminated by purchasers within the past 12 months and the total number of such voluntary terminations to date.

(2) The seller of an assisted marketing plan filing information under Subsection (1) shall pay an annual fee as determined by the department in accordance with Section 63J-1-504 when the seller files the information required under Subsection (1).

(3)(a) Before commencing business in this state, a seller of an assisted marketing plan shall file the information required under Subsection (1) and receive from the division proof of receipt of the filing.

(b) A seller shall annually comply with Subsections (1) and (2) by no later than the anniversary of the day on which the seller receives from the division proof of receipt of the filing.

(4) A seller of an assisted marketing plan claiming an exemption from filing under this chapter shall file a notice of claim of exemption from filing with the division. A seller claiming an exemption from filing bears the burden of proving the exemption. The division shall collect a fee for filing a notice of claim of exemption, as determined by the department in accordance with Section 63J-1-504.

(5) A representation described in Subsection (1)(f) shall be relevant to the geographic market in which the business opportunity is to be located. When the statements or representations are made, a warning after the representation in not less than 12 point upper and lower case boldface type shall appear as follows:

"CAUTION

No guarantee of earnings or ranges of earnings can be made. The number of purchasers who have earned through this business an amount in excess of the amount of their initial payment is at least _____ which represents _____% of the total number of purchasers of this business opportunity."

**Credits**

Laws 1981, c. 69, § 1; Laws 1983, c. 58, § 12; Laws 1995, c. 85, § 3, eff. May 1, 1995; Laws 2008, c. 382, § 135, eff. May 5, 2008; Laws 2009, c. 183, § 14, eff. May 12, 2009; Laws 2010, c. 378, § 208, eff. May 11, 2010; Laws 2017, c. 98, § 3, eff. May 9, 2017.

Notes of Decisions (13)

U.C.A. 1953 § 13-15-4, UT ST § 13-15-4
Current through 2021 First Special Session.

---

**End of Document**                                            © 2021 Thomson Reuters. No claim to original U.S. Government Works.

West's Utah Code Annotated
  Title 13. Commerce and Trade
    Chapter 15. Business Opportunity Disclosure Act

U.C.A. 1953 § 13-15-4.5

§ 13-15-4.5. Notice of exemption filing

Currentness

(1)(a) Any franchise exempt from this chapter pursuant to Subsection 13-15-2(1)(b)(iii) shall, prior to offering for sale or selling a franchise to be located in this state or to a resident of this state, file with the division a notice that the franchisor is in substantial compliance with the requirements of the Federal Trade Commission rule found at Title 16, Chapter I, Subchapter d, Trade Regulation Rules, Part 436, Disclosure Requirements and Prohibitions Concerning Franchising and Business Opportunity Ventures, together with a filing fee determined by the department pursuant to Section 63J-1-504, not to exceed $100.


  (b) The notice shall state:


    (i) the name of the applicant;


    (ii) the name of the franchise;


    (iii) the name under which the applicant intends to or does transact business, if different than the name of the franchise;


    (iv) the applicant's principal business address; and


    (v) the applicant's federal employer identification number.


(2)(a) The initial exemption granted under this section is for a period of one year from the date of filing the notice.


  (b) The exemption may be renewed each year for an additional one-year period upon filing a notice for renewal and paying a renewal fee determined pursuant to Section 63J-1-504, not to exceed $100.


(3) The division may make rules to implement this section.


**Credits**

Laws 1995, c. 85, § 4, eff. May 1, 1995; Laws 2008, c. 382, § 136, eff. May 5, 2008; Laws 2009, c. 183, § 15, eff. May 12, 2009.


U.C.A. 1953 § 13-15-4.5, UT ST § 13-15-4.5

Current through 2021 First Special Session.

**End of Document**                                              © 2021 Thomson Reuters. No claim to original U.S. Government Works.

West's Utah Code Annotated
Title 13. Commerce and Trade
Chapter 15. Business Opportunity Disclosure Act

U.C.A. 1953 § 13-15-5

§ 13-15-5. Disclosure statement furnished to buyer--Contents

Currentness

All the information required under Section 13-15-4 shall be contained in a single disclosure statement or prospectus which shall be provided to any prospective purchaser at least 10 business days prior to the earlier of:

(1) the execution by prospective purchaser of any agreement imposing a binding legal obligation on such prospective purchaser by which the seller knows or should know, in connection with the sale or proposed sale of the "assisted marketing plan"; or

(2) the payment by a prospective purchaser, by which the seller knows or should know of any consideration in connection with the sale or proposed sale of the "assisted market plan." The disclosure statement or prospectus may not contain any material or information other than that required under Section 13-15-4. However, the seller may give prospective purchasers nondeceptive information other than that contained in the disclosure statement or prospectus if it does not contradict the information required to appear in the disclosure statement or prospectus. A cover sheet attached to the disclosure statement or prospectus shall conspicuously state the name of the seller, the date of issuance of the disclosure statement or prospectus, and a notice printed in not less than 12 point upper and lower case boldface type as follows:

INFORMATION FOR PURCHASE OF A MARKETING PLAN:

To protect you, the State Division of Consumer Protection has required your seller to give you this information. The State Division of Consumer Protection has not verified this information as to its accuracy. The notice may contain additional precautions deemed necessary and pertinent. The seller, in lieu of the information requested by Section 13-15-4, may file with the commission and provide to prospective purchasers certified disclosure documents authorized for use by the Federal Trade Commission pursuant to Title 16, Chapter I, Subchapter d, Trade Regulation Rules, Part 436, "Disclosure Requirements and Prohibitions Concerning Franchising and Business Opportunity Ventures."

**Credits**
Laws 1981, c. 69, § 1; Laws 1983, c. 58, § 13; Laws 1987, c. 92, § 25; Laws 2010, c. 378, § 209, eff. May 11, 2010.

Notes of Decisions (6)

U.C.A. 1953 § 13-15-5, UT ST § 13-15-5
Current through 2021 First Special Session.

**End of Document**

© 2021 Thomson Reuters. No claim to original U.S. Government Works.

 © 2021 Thomson Reuters. No claim to original U.S. Government Works.

West's Utah Code Annotated
Title 13. Commerce and Trade
Chapter 15. Business Opportunity Disclosure Act

U.C.A. 1953 § 13-15-6

## § 13-15-6. Failure to file disclosures--Relief where seller fails to comply with chapter--Relief where division granted judgment or injunction--Administrative fines

Currentness

(1) If a seller fails to file the disclosures required under Section 13-15-4, or fails after demand by the division to file the disclosure within 15 days, the division, consistent with Section 13-2-5, shall begin adjudicative proceedings and shall issue a cease and desist order.

(2) Any purchaser of a business opportunity from a seller who does not comply with this chapter is entitled, in an appropriate court of competent jurisdiction, to rescission of the contract, to an award of a reasonable attorney's fee and costs of court in an action to enforce the right of rescission, and to the amount of actual damages or $2,000, whichever is greater.

(3) In the event the division is granted judgment or injunctive relief in an appropriate court of competent jurisdiction, the division, in addition to any other relief, is entitled to an award of reasonable attorney's fees, costs of court, and investigative fees.

(4)(a) In addition to other penalties under this chapter, and to its other enforcement powers under Title 13, Chapter 2, Division of Consumer Protection, the division director may impose an administrative fine of up to $2,500 for each violation of this chapter.

(b) All money received through administrative fines imposed under this section shall be deposited in the Consumer Protection Education and Training Fund created by Section 13-2-8.

**Credits**
Laws 1981, c. 69, § 1; Laws 1983, c. 58, § 14; Laws 1986, c. 130, § 2; Laws 1987, c. 161, § 31; Laws 1995, c. 85, § 5, eff. May 1, 1995; Laws 2006, c. 47, § 1, eff. March 10, 2006.

Notes of Decisions (2)

U.C.A. 1953 § 13-15-6, UT ST § 13-15-6
Current through 2021 First Special Session.

**End of Document**
© 2021 Thomson Reuters. No claim to original U.S. Government Works.

West's Utah Code Annotated
    Title 13. Commerce and Trade
        Chapter 15. Business Opportunity Disclosure Act

U.C.A. 1953 § 13-15-7

## § 13-15-7. Civil penalty for violation of cease and desist order

Currentness

Any person who violates any cease and desist order issued under this chapter is subject to a civil penalty not to exceed $5,000 for each violation. Civil penalties authorized by this chapter may be imposed in any civil action brought by the attorney general or by a county attorney under this section. All penalties received shall be deposited in the Consumer Protection Education and Training Fund created in Section 13-2-8. No action to collect a civil penalty may be commenced more than five years after the date the penalty was imposed.

**Credits**
Laws 1983, c. 58, § 15; Laws 1995, c. 85, § 6, eff. May 1, 1995.

U.C.A. 1953 § 13-15-7, UT ST § 13-15-7
Current through 2021 First Special Session.

**End of Document** © 2021 Thomson Reuters. No claim to original U.S. Government Works.

# EXHIBIT 2

Case 2:19-cv-08182-MEMF-AFM   Document 68   Filed 02/23/22   Page 86 of 87   Page ID #:626

# ENTITY INFORMATION

## ENTITY INFORMATION

**Entity Name:**

REAL ESTATE ELEVATED LLC

**Entity Number:**

E0167012019-6

**Entity Type:**

Domestic Limited-Liability Company (86)

**Entity Status:**

Revoked

**Formation Date:**

04/10/2019

**NV Business ID:**

NV20191277747

**Termination Date:**

Perpetual

**Annual Report Due Date:**

4/30/2020

**Series LLC:**

☐

**Restricted LLC:**

☐

## REGISTERED AGENT INFORMATION

**Name of Individual or Legal Entity:**

CORPORATION SERVICE COMPANY

**Status:**

Active

**CRA Agent Entity Type:**

Case 2:19-cv-08182-MEMF-AFM   Document 68   Filed 02/23/22   Page 87 of 87   Page ID #:627

**Registered Agent Type:**

Commercial Registered Agent

**NV Business ID:**

NV20101844335

**Office or Position:**

**Jurisdiction:**

DELAWARE

**Street Address:**

112 NORTH CURRY STREET, Carson City, NV, 89703, USA

**Mailing Address:**

**Individual with Authority to Act:**

GEORGE MASSIH

**Fictitious Website or Domain Name:**

---

**OFFICER INFORMATION**

☐ VIEW HISTORICAL DATA

| Title | Name | Address | Last Updated | Status |
|-------|------|---------|--------------|--------|
| Manager | MATTHEW MAGISTRO | 9550 SOUTH EASTERN AVE, SUITE 253, LAS VEGAS, NV, 89118, USA | 04/10/2019 | Active |

Page 1 of 1, records 1 to 1 of 1

Filing History        Name History        Mergers/Conversions

Return to Search        Return to Results